452 So.2d 946 (1984)
Carlyle S. FABAL and Nancy G. Fabal, His Wife, Appellants,
v.
FLORIDA KEYS MEMORIAL HOSPITAL, United States Fidelity & Guaranty Company and Florida Patient's Compensation Fund, Appellee.
No. 83-952.
District Court of Appeal of Florida, Third District.
May 29, 1984.
Rehearing Denied July 17, 1984.
Proenza & White and David J. White, Miami, for appellants.
Lanza, Sevier, Womack & O'Connor, Coral Gables, and Judith A. Bass, Miami, for appellee.
Before HENDRY, BASKIN and FERGUSON, JJ.
PER CURIAM.
Appellants seek reversal of summary final judgment entered by the Circuit Court for Monroe County in favor of the Florida Patient's Compensation Fund. The judgment, in pertinent part, states:
THIS CAUSE came before the Court February 18, 1983, on the Defendant, FLORIDA PATIENT'S COMPENSATION FUND'S Motion for Summary Judgment, or in the alternative, Motion for Judgment on the Pleadings, and the Court, having heard argument of counsel and being otherwise duly advised in the premises, finds as follows:
1. The initial Complaint in this cause was filed on April 3, 1980. The initial Complaint did not name as a party Defendant, the FLORIDA PATIENT'S COMPENSATION FUND.
2. The FLORIDA PATIENT'S COMPENSATION FUND was first made a party Defendant to this litigation with *947 the filing of Plaintiffs' "Amended Complaint." Said Amended Complaint was not filed until January 20th, 1982.
3. This medical malpraction [sic] action was brought by the Plaintiffs, CARLYLE S. FABAL and NANCY C. FABAL, his wife, for injuries sustained on or about June 28, 1978, when he fell and struck his head in the FLORIDA KEYS MEMORIAL HOSPITAL following an operation on June 26, 1978.
4. Plaintiffs' cause of action, not having been commenced as against the FLORIDA PATIENT'S COMPENSATION FUND within two (2) years from June 28, 1978, is barred by Florida Statute § 95.11(4)(b)...
It is, therefore, ORDERED AND ADJUDGED that the Plaintiffs, CARLYLE S. FABAL and NANCY C. FABAL, his wife, take nothing by this action against the FLORIDA PATIENT'S COMPENSATION FUND and that the Defendant, FLORIDA PATIENT'S COMPENSATION FUND, go hence without day, with costs to be taxed against the Plaintiffs upon Motion duly noticed by the Defendant, FLORIDA PATIENT'S COMPENSATION FUND.
Appellants contend (1) that the trial court erred in failing to recognize that a claim against a non-tortfeasor insurance fund whose liability is solely derived from the negligent conduct of the tortfeasor is not barred by section 95.11(4)(b), Florida Statutes, and (2) the trial court erred in failing to recognize that section 95.11(4)(b) begins to run only upon discovery that the Florida Patient's Compensation Fund extended coverage to Florida Keys Memorial Hospital.
We disagree and affirm in light of the views expressed in Taddiken v. Florida Patient's Compensation Fund, 449 So.2d 956 (Fla. 3d DCA 1984); Burr v. Florida Patient's Compensation Fund, 447 So.2d 349 (Fla. 2d DCA 1984); and Owens v. Florida Patient's Compensation Fund, 428 So.2d 708 (Fla. 1st DCA), pet. for review denied, 436 So.2d 100 (Fla. 1983). See §§ 95.11(4)(b) and 768.54(3)(e)1, Florida Statutes (1977). See also Mercy Hospital, Inc. v. Menendez, 371 So.2d 1077 (Fla. 3d DCA), cert. denied, 383 So.2d 1198 (Fla. 1980).
Affirmed.
FERGUSON, Judge (dissenting).
The ruling of the trial court on summary judgment, affirmed by the majority, is that for failure to join the Florida Patient's Compensation Fund within two years after the cause of action accrued against the Florida Keys Memorial Hospital  although the action was timely filed against the hospital  the plaintiffs' recovery will be limited to $100,000 even if proven damages are greater. The statute does not require, and there is no other justification for, the harsh result.
In defense to the summary judgment motion, plaintiffs responded that they did not initially join the Fund at the time the action was commenced against defendant hospital because it was not until June 15, 1981, that they learned of the Fund coverage.[1] The Fund argued to the trial court that summary judgment was mandated by Owens v. Florida Patient's Compensation Fund, 428 So.2d 708 (Fla. 1st DCA), rev. denied, 436 So.2d 100 (Fla. 1983), which at the time was the only authority on point.[2] I think, respectfully, that Owens was incorrectly decided.
*948 The facts in Owens were identical to those presented here  the plaintiff had timely filed suit against defendant hospital, but had not joined the Fund as a defendant until more than two years after the injury occurred. The issue there, as here, was whether the applicable statute of limitations barred plaintiff's claim against the Fund.[3] In holding that it did, the trial court relied heavily on the decision of this court in Mercy Hospital, Inc. v. Menendez, 371 So.2d 1077 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1198 (Fla. 1980).
The appellant in Owens had argued that the Fund is like an insurance program, and that the controlling cases are those which hold that when a defendant tortfeasor's insurance company is joined as a party defendant, the statute which limits the time within which an action may be commenced against the tortfeasor is not available to the insurer as a defense. See, e.g., Clemons v. Flagler Hospital, Inc., 385 So.2d 1134 (Fla. 5th DCA 1980); Davis v. Williams, 239 So.2d 593 (Fla. 1st DCA 1970). The Owens court rejected this contention based upon language in Menendez which states that the obligation of the Patient's Compensation Fund is not to the health care provider, but rather is primarily to a plaintiff patient. Menendez, 371 So.2d at 1079. The Menendez court had also stated that the Fund's obligation "is not secondary and is not a set-off." Id. Based on its reading of Menendez, the Owens court reasoned that the "insurer's exception" to the statute of limitations defense does not apply to cases involving the Fund. Owens, 428 So.2d at 710.
While the holding of Owens appears to flow logically from Menendez, an examination of Menendez is helpful to an understanding of my disagreement with the Owens result.
The main issue presented in Menendez was:
Is the defendant health care provider required to plead the Medical Malpractice Reform Act in order to receive the benefits of the limitation [of judgment statute] or may compliance with the statute be shown in limitation of the judgment after the entry of the jury verdict.[4] 371 So.2d at 1978-79.
The court held that the plaintiff has the burden of making the Fund a party before judgment where recovery is sought against a health care provider in an amount exceeding $100,000. Thus, where the plaintiff failed to do this, he could not recover so much of the judgment as exceeded the $100,000 statutory limit from either the defendant hospital or the Fund.
First, the previously cited language from the Menendez decision of this court, which was embraced by the Owens court enroute to its severe conclusion, was written in response to a subsidiary question  whether Section 768.54(3)(e), which requires that the Fund be named as a defendant in the malpractice action, was an unconstitutional legislative attempt at rule-making in violation of principles laid down in Markert v. Johnston, 367 So.2d 1003 (Fla. 1978). It was held in Markert that any legislative *949 enactment prohibiting the joinder of motor vehicle insurers at the commencement of suit brought against an insured would be an invasion of the Florida Supreme Court's exclusive right to establish rules of procedure. Solely for the purpose of hurdling the constitutional obstacle, the Menendez court distinguished the Fund from an insurance program. Subsequent decisions, however, render unnecessary such a forced distinction in order to preserve the constitutionality of the Medical Malpractice Reform Act's joinder provision.[5]
Second, the similarities between the Fund and an insurance program clearly preponderate over the dissimilarities. In Clemons v. Flagler Hospital, Inc., 385 So.2d 1134 (Fla. 5th DCA 1980), the court held that the statute of limitations did not begin to run against an insurer upon the occurrence of the incident giving rise to the cause of action, reasoning that:
[T]he only actual or potential ground of the insurers' liability to the plaintiff is the entirely derivative one to indemnify the hospital for any judgment rendered against it. 385 So.2d at 1135.
Further explaining why the statute of limitations as applied to the insurer should not be coterminous with the statute as applied against the tortfeasor-insured, the court quoted from Davis v. Williams, 239 So.2d 593 (Fla. 1st DCA 1970):
Appellant's cause of action, if any, against appellee insurance company does not arise in tort but arises out of contract, and does not accrue until after appellant has secured a judgment against the alleged defendant tort-feasor to whom appellee issued its policy of professional liability insurance. It is therefore apparent that appellant's cause of action to impose liability on appellee under the insurance policy issued by it has not yet accrued and, therefore, any statute of limitations which does not commence to run until the accrual of the cause of action has not yet been activated. 385 So.2d at 1136 (quoting from Davis, 239 So.2d at 595). [e.s.]
Analogously, there is no obligation on the part of the Fund unless (1) judgment is entered against the health care provider, and (2) the amount of the judgment exceeds $100,000. The claim against the Fund is also derivative in nature, depending not upon any tortious conduct by the Fund, but arising solely out of a contract whereby the Fund agrees to be liable for any damage award against the health care provider in an amount in excess of $100,000, provided the health care provider complies with certain membership requirements. See § 768.54(2)(b), (Fla. Stat. 1981); see also Florida Patient's Compensation Fund v. Mercy Hospital, Inc., 419 So.2d 348 (Fla. 3d DCA 1982) (despite several differences between the Fund and an insurer, Fund is given same benefit that inures to private insurers  the avoidance of liability for punitive damages  since deterrent effect will not be achieved through punishment of defendant which committed no wrongful act).
An insurer is one who contracts to indemnify against specific perils, see Black's Law Dictionary 721 (5th ed. 1979), which is precisely the Fund's undertaking with respect to a health care provider. Although Menendez and Owens suggest that the Fund is not an insurer, they do not say what it is. A historical review is helpful to that end.
The Fund was created to fill a void at a time when insurance companies were raising rates and withdrawing from the professional liability insurance market. That *950 made it difficult for health care providers to obtain insurance without paying oppressive rates, and these additional costs were being passed on to the public. Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365, 367 (Fla. 1981). Senate Bill No. 481 which created the Florida Patient's Compensation Fund was entitled "AN ACT relating to medical malpractice insurance ..." and referred to participating members, specifically hospitals, as "insureds". See Medical Malpractice Reform Act, Ch. 78-47, Laws of Florida 49. The bill also provided that "[m]anagement of the fund shall be vested with the Joint Underwriting Association authorized by subsection 627.351(7) [of the Insurance Code]...." Id. at 55. There is not to be found in the original Medical Malpractice Reform Act, or any of its amendments, an intent to give to the Fund any substantive rights greater than those enjoyed by insurance companies. By requiring that the Fund be named as a defendant, the statute insures that the Fund is given notice of the suit and an opportunity to evaluate its rights and liabilities, to make a timely investigation, to negotiate with claimants, and to prevent fraud and collusion upon it. Cf. Hartford Accident & Indemnity Co. v. Mills, 171 So.2d 190, 195 (Fla. 1st DCA), cert. denied, 179 So.2d 346 (Fla. 1965) (rights of insurer). The insurer's right to notice and an opportunity to defend a claim is a common feature in a contract of insurance, from which does not necessarily follow a right to be insulated from judgment by virtue of a statute of limitations.
Third, plaintiffs correctly argue that Section 95.11(4)(b) does not apply to the Fund because it is not a person in privity with the health care provider. This limitations statute, which was applied by the court to bar the claim against the Fund, provides in a separate clause: "The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care." [e.s.] Obviously, the majority gives to the Fund the status of a person in privity with the health care provider, which is incongruous with any juridical definition of privity.
Although the term "privity" has no definition which can be applied uniformly, Tallahassee Variety Works v. Brown, 106 Fla. 599, 610, 144 So. 848, 852 (1932), it is not completely elusive, but denotes a mutual or successive relationship to the same interest in property. Industrial Credit Co. v. Berg, 388 F.2d 835, 841 (8th Cir.1968); Osburn v. Stickel, 187 So.2d 89, 92 n. 2 (Fla. 3d DCA 1966). The relationship between the hospital and the Fund, whereby the Fund agrees to provide "coverage" to the hospital to the extent that a malpractice claim against the hospital exceeds $100,000, does not remotely qualify as a privity relationship  else so might any contractual relationship. A good example of privity is set out in Strathmore Riverside Villas Condominium Association, Inc. v. Paver Development Corp., 369 So.2d 971 (Fla. 2d DCA), cert. denied, 379 So.2d 210 (Fla. 1979) where it was said that the original purchaser of a newly constructed condominium home was in privity with the developer but a subsequent purchaser of the home was not. Applying the definition of privity to the term in its statutory context, the logical conclusion is that the two-year time period within which a medical malpractice action must be commenced against a tortfeasor health care provider applies only to any successor[6] in ownership to that health care provider.
Fourth, the suggestion made in Taddiken v. Florida Patient's Compensation Fund, 449 So.2d 956 (Fla. 3d DCA 1984)  that delay in making the Fund a party would seriously impair its right to defend  rings hollow. Initially, the health care provider must provide an adequate defense of the Fund as a condition precedent to any *951 obligation of the Fund to pay a claim. § 768.54(3)(e)2., Fla. Stat. (1981). Further, since the Fund (like an insurer) will not be involved in the conduct which gives rise to the cause of action, its separate defense will, in most cases, be dependent upon or directly tied to the defense of the health care provider  whether the Fund be joined in the action early or late. Whether a plaintiff should be permitted to join the Fund as a defendant long after the action is commenced is answered by equitable principles, e.g., laches, and not by Section 95.11(4)(b).
Finally, although it is possible to hold that joinder of the Fund after two years from the date of the act which gives rise to the cause of action is permissible without rejecting the narrow holding of Menendez, I disagree with the Menendez rationale. Section 768.54(3)(e)1. provides that a plaintiff may not recover against the Fund unless the Fund "was named as a defendant in the suit."[7] The statute does not require, as the Menendez court construed it, that the plaintiff has the obligation to make the Fund a defendant or forfeit the right to enforce the full amount of a judgment. An inference even more reasonable than the one drawn in Menendez is that the tort-feasor-health care provider is obligated to join the Fund as a party (just as an insured is obligated to give notice to his insurer), or be liable for the full amount of judgment.[8] Imposing upon an injured party the obligation to sue not only the person who caused his injury, but other unknown parties who may be liable in part only because of an agreement between the third party and tortfeasor, is procedurally wrong.[9] That the liability of the actual tortfeasor is limited because he has contracted with a third party for excess damages should not preclude a plaintiff from obtaining a judgment against the tortfeasor for the full amount of his damages. It should be the health care provider's obligation to limit its liability by bringing the Fund into the action by way of a third-party complaint. See Fla.R. Civ.P. 1.180(a).
Further, there is not to be found in Section 768.54 any language supportive of Menendez' novel theory that the obligation of the Patient's Compensation Fund is not to the health care provider, but rather is primarily to a plaintiff. To the contrary, Section 768.54(3)(e)3. provides explicitly that a judgment for a malpractice claimant is against the health care provider and that, as a matter of claims collection procedure, that portion of the judgment which exceeds $100,000 is to be presented to the Fund for payment.[10] The procedure is the same as in the collection of a judgment against an insurance company.
For the foregoing reasons, the holding here should be that where a medical malpractice action against a health care provider is timely commenced, the statute of limitations in Section 95.11(4)(b) is no bar to the subsequent joinder of the Florida Patient's Compensation Fund, subject only to the statutory requirement that the Fund be joined as a defendant in sufficient time so as to permit it, if warranted, to interpose a defense to the plaintiff's claim. Such a *952 holding is perfectly consistent with Section 768.54(3)(e)1. and with the holding in Menendez which mandates only that the joinder must precede a judgment. The Fund has presented no compelling reason why this logical and workable interpretation of the statute should give way to the harsh rule of Owens.
NOTES
[1] Although not pertinent to the legal issues raised, I think the following worthy of note. Plaintiffs were represented initially by a law firm which also represents the Fund. It was not until after the expiration of two years from the date of the alleged tort that the law firm learned, through discovery, that the defendant hospital was a Fund member. That law firm withdrew in favor of present counsel.
[2] Owens has since been followed in Burr v. Florida Patient's Compensation Fund, 447 So.2d 349 (Fla. 2d DCA 1984), and an opinion of this court released prior to this one. Taddiken v. Florida Patient's Compensation Fund, 449 So.2d 956 (Fla. 3d DCA 1984). Another case presenting the question is currently pending in this court. Lugo v. Glasser (Case No. 83-932, oral argument set for June 4, 1984).
[3] Section 95.11(4)(b), Florida Statutes (1981) provides in part:

An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence... . The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care.
[4] Section 768.54(3)(e)1., Florida Statutes (1981) provides in part:

Any person may file an action against a participating health care provider for damages covered under the fund, except that the person filing the claim shall not recover against the fund unless the fund was named as a defendant in the suit. The fund is not required to actively defend a claim until the provisions of s. 768.44 are completed or waived, suit is instituted, and the fund is named therein. If, after the facts upon which the claim is based are reviewed, it appears that the claim will exceed $100,000 or, if greater, the amount of the health care provider's basic coverage, the fund shall appear and actively defend itself when named as a defendant in the suit. [e.s.]
[5] Recently, the Florida Supreme Court, in VanBibber v. Hartford Accident & Indemnity Insurance Co., 439 So.2d 880 (Fla. 1983), held that an insurance company non-joinder statute quite similar to the one invalidated in Markert was constitutional because it regulated a substantive, rather than a procedural, right. Thus, a concession that the Fund is akin to an insurer would no longer, under the authority of VanBibber, raise a question as to the constitutionality of Section 768.54(3)(e).

For an informative discussion of legislature court disagreement on the question whether joinder statutes are procedural or substantive in nature, see generally Motes, Comment: VanBibber v. Hartford Accident & Indemnity Insurance Company, 3 Trial Advocate Q. 15 (1984).
[6] A successor is one who takes the place another has left. Wawak Co. v. Kaiser, 90 F.2d 694, 697 (7th Cir.1937). The term successor, with reference to a corporation, generally means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of the first corporation. Schmoele v. Atlantic City R. Co., 110 N.J. Eq. 597, 160 A. 524, 526 (1932).
[7] Section 768.54(3)(e)1., Florida Statutes (1981), set out supra note 4.
[8] In Menendez, the appellant hospital did not question whether it was a plaintiff's duty to join the Fund as a defendant. The issue was only whether the hospital could limit its liability by joining the Fund after a judgment was entered in an amount exceeding $100,000.
[9] Another hidden consequence of the majority holding is to simply shift liability from the Fund to legal malpractice insurers to the extent a judgment exceeds $100,000. The failure of plaintiffs' original counsel in this case to ascertain whether recovery against the tortfeasor was limited owing to a contract between the tort-feasor and the Fund, and if so to name the Fund as a defendant, may be evidence of negligence. The same applies to plaintiffs' attorneys in Owen, Burr, and Taddiken. This point cannot be lightly dismissed.
[10] Section 768.54(3)(e)3., Florida Statutes (1981) provides in part:

A person who has recovered a final judgment ... against a health care provider who is covered by the fund may file a claim with the fund to recover that portion of such judgment or settlement which is in excess of $100,000... .