HERSEY, Chief Judge.
The issue in this appeal from a summary final judgment is the applicability of the two-year statute of limitations for medical malpractice claims (section 95.11(4)(b), Flor *1341 ida Statutes (1983)) to a complaint against the Florida Patient’s Compensation Fund.
The trial court found the statute applicable and held by implication that the allegations of the complaint established that the claim was time-barred. We reverse as to both conclusions.
The complaint alleges misdiagnosis and treatment of a knee injury occurring from April through July 1980. The complaint was filed against Paul Baxt, M.D., and his professional association on December 9, 1981. On August 30, 1982, a second amendment to the complaint was filed to add appellee, Florida Patient’s Compensation Fund, as a defendant. The summary final judgment directed to this amendment followed.
The initial inquiry is whether the statute of limitations in question applies to the Fund as a “health care provider [or] persons in privity with the provider of health care.” The statute, section 95.-ll(4)(b), Florida Statutes, provides in relevant part:
(b) An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. An “action for medical malpractice” is defined as a claim in tort or in contract for damages because of the death, injury, or monetary loss to any person arising out of any medical, dental, or surgical diagnosis, treatment, or care by any provider of health care. The limitation of actions within this subsection shall be limited to the health care provider and persons in privity with the provider of health care.
We recently had occasion to consider the relationship between the statute and the Fund. In Florida Patient’s Compensation Fund v. Tillman, 453 So.2d 1376 (Fla. 4th DCA 1984), a doctor operated on appel-lee in April 1978 and implanted a prosthetic knee device with mismatched components. Appellee filed a complaint in February 1980 but did not add appellant Fund as a defendant until July 1981. Appellant moved for summary judgment, asserting that the two-year statute of limitations applied to the health care provider and persons in privity with it. Appellee argued that he was in privity only with his doctor and the hospital and therefore the statute was not applicable to appellant. This court held that the statute of limitations defense was not available to the Fund, adopting the logic and rationale of the dissent in Fabal v. Florida Keys Memorial Hospital, 452 So.2d 946 (Fla. 3d DCA 1984).
In Fabal the dissenting judge reasoned that “the similarities between the Fund and an insurance program clearly preponderate over the dissimilarities.” 452 So.2d at 949. Like an insurance company, the Fund has no obligation for payment unless a judgment in excess of $100,000 is entered against the health care provider. The Fund’s liability is derivative because it depends not on any tortious conduct which it committed, but arises solely out of a contract with the health care provider.
Furthermore, the dissenting judge observed that section 95.11(4)(b), Florida Statutes, did not apply because the Fund “is not a person in privity with the health care provider.... The relationship between the hospital and the Fund, whereby the Fund agrees to provide ‘coverage’ to the hospital to the extent that a malpractice claim against the hospital exceeds $100,000, does not remotely qualify as a privity relationship — else so might any contractual relationship.” 452 So.2d at 950.
Finally, the dissent rejected the argument that a delay in adding the Fund as a defendant would impair its right to defend, pointing out that since the Fund is not involved in the conduct giving rise to the cause of action, its defense depends upon that of the health care provider, whether the Fund is added early or late.
This court in Tillman and in Isabella v. Florida Patient’s Compensation Fund, 462 So.2d 129 (Fla. 4th DCA 1985), in hold *1342 ing that the statute of limitations was unavailable as a defense for the Fund, recognized that it was in direct and express conflict with the first, second and third districts. See Owens v. Florida Patient’s Compensation Fund, 428 So.2d 708 (Fla. 1st DCA) (the Fund has a direct obligation to the plaintiff-patient in the action against the health care provider), rev. denied, 436 So.2d 100 (Fla.1983); Burr v. Florida Patient’s Compensation Fund, 447 So.2d 349, 351 (Fla. 2d DCA) (the statute applies “when anyone connected with the incident against whom the claimant alleges damages is in a privity relationship with the health care provider”) (emphasis original), rev. denied, 453 So.2d 43 (Fla.1984); Taddiken v. Florida Patient’s Compensation Fund, 449 So.2d 956, 958 (Fla. 3d DCA 1984) (“the ... Fund is in privity with the health care provider so that the two-year statute of limitations provision is applicable”). To this list we now add the fifth district: Florida Patient’s Compensation Fund v. S.L.R., 458 So.2d 342, 343 (Fla. 5th DCA 1984) (“It would be illogical to have different statutes of limitations applied to the Fund and to the health care provider, whether the Fund’s is shorter or longer”). And there have been additional cases contrary to our position.
On the other hand, language used by the supreme court in a recent case supports the dual philosophy that (1) the Fund is more analogous to an insurer than to that of “one in privity with a health care provider” and the (2) the ameliorating influence of the Fund on the medical malpractice crisis is unnecessarily curtailed by artificially applying to it a statute of limitations that has no such predisposition by language or logic, both of which underlie our rationale in Tillman. In Florida Patient’s Compensation Fund v. Von Stetina, 474 So.2d 783 (Fla.1985), our supreme court stated with regard to the genesis of the Fund:
In 1975, the Florida Legislature instituted the Fund as a non-profit entity to provide medical malpractice protection to the physicians and hospitals who join it, as well as a method of payment to medical malpractice plaintiffs. See ch. 75-9, Laws of Fla. The Fund provides a statutory scheme of pooling the risk of losses and placing major losses in the entity that can best spread the risk of loss as well as control the conduct of those at fault. Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla.1983), appeal dismissed [— U.S.-] 104 S.Ct. 1673 [80 L.Ed.2d 149] (1984). In its preamble to th.e 1976 amendment, the legislature summarized its public policy findings with respect to the need for the enactment. It reads, in part, as follows:
WHEREAS, despite the responsive and responsible actions of the 1975 session of the legislature, professional liability insurance premiums for Florida physicians have continued to rise and ... such insurance, even at exorbitant rates, is becoming virtually unavailable in the voluntary private sector, and ... this insurance crisis threatens the quality of health care services in Florida ... and ... this crisis also poses a dire threat to the continuing availability of health care in our state ... and ... our present tort law/liability insurance system for medical malpractice will eventually break down ... [and] fundamental reforms of said tort law/liability insurance system must be undertaken, and ... the continuing crisis proportions of this compelling social problem demand immediate and dramatic legislative action....
Ch. 76-260, Laws of Fla.
474 So.2d at 788. Most pertinent to our inquiry here, the supreme court continues: “The Florida Patient’s Compensation Fund provides health care providers with medical malpractice liability coverage for the benefit of both the health care providers and those members of the public who become victims of medical malpractice.” Id.
Accordingly, we reverse on this point based upon Tillman and Isabelle and certify that our opinion again conflicts with cases from each of the other districts.
Because we deem it an issue sufficiently important to warrant some discussion, we treat appellant’s alternative position even *1343 though our disposition on the applicability vel non of the statute of limitations might otherwise be considered to have rendered it moot.
Appellant argues that even if section 95.11(4)(b), Florida Statutes, does apply to the Fund, it did not conclusively show that the statute of limitations had run on appellant’s claim. See Board of Trustees of Santa Fe Community College v. Caudill Rowlett Scott, Inc., 461 So.2d 239, 242-43 (Fla. 1st DCA 1984) (“In order to succeed on a motion for summary judgment based upon the Statute of Limitations, the movants in the case at issue were required to conclusively show that there exists no disputed issue of fact with respect to the date of commencement of the limitations period....”)
The statute in this case requires that appellant commence an action within two years of the incident, or within two years of the time that he discovered or should have discovered the incident. § 95.11(4)(b), Fla.Stat. Appellant alleged in his complaint that he came under the treatment of Baxt and his associates in April 1980; that he was hospitalized in May with blood clots in his kidneys due to improper anti-coagulation therapy as prescribed by Baxt in April; that during the months of May, June and July, appellant performed exercises with a weighted boot pursuant to Baxt’s instructions; that in September 1980 appellant was hospitalized under the care of a different doctor, who diagnosed the condition as an “O’Donahue triad” injury; and that in February 1981 appellant was operated on in New York for an anterior cruciate ligament substitution.
Appellee relies solely on appellant’s complaint for its assertion that appellant’s claim against it is time-barred. It argues that Baxt treated appellant only from April to May 1980; that appellant knew or should have known of Baxt’s malpractice in May 1980 because of the blood clots in his kidneys; and that since appellant did not add appellee as a defendant until August 1982 — more than two years later — summary judgment was properly entered.
In Florida Patient’s Compensation Fund v. Tillman, 453 So.2d at 1376, Dr. Waxman performed surgery on appellee in April 1978, at which time he implanted a prosthetic knee device which contained mismatched components. Shortly after surgery, Waxman told appellee of the problem, and appellee ultimately had corrective surgery done by a different surgeon. Ap-pellee filed his complaint in February 1980 and added appellant as a defendant in July 1981.
The question before this court was when the “incident giving rise to the cause of action” occurred. This court held that the “incident” was not solely the particular medical procedure, since that would always be “discovered” at the time it was performed. Rather, the term encompassed 1) a medical procedure; 2) tortiously performed; 3) which injured (damaged) the patient.
Although Waxman told Tillman of the mismatch shortly after the operation, and Tillman admitted that he never improved, Waxman also told Tillman that he “ ‘thought that it would work out fine....,”’ id. at 1379, and that Tillman was improving with each office visit. This court therefore held:
In addition to the very real possibility that Tillman was never in a position to recognize that an incident had occurred, there exists another factual determination which affects our consideration. If Tillman knew of the mismatched components shortly after the operation, the statute would begin to run only if the subsequent damage was caused by the mismatched components. Although the evidence would support a finding to that effect, there was evidence of other possible causes which were never brought to Tillman’s attention.

Where there is a question as to notice or discovery in a medical malpractice action, it is for the jury to decide when the statute of limitations begins to run.
Id. at 1379, 1380. See also Weiner v. Savage, 407 So.2d 288, 289 (Fla. 4th DCA 1981) *1344 (“the statute of limitations in a medical malpractice action commences when the plaintiff is on notice of the possible invasion of his legal rights. There was a definite issue of fact on this question and the court acted correctly in denying a motion for directed verdict on the issue”); Phillips v. Mease Hospital and Clinic, 445 So.2d 1058, 1061 (Fla. 2d DCA) (the issue of when appellants discovered or should have discovered the doctor’s alleged negligence is one of fact and “is for a jury and not the proper subject for summary judgment”), rev. denied, 453 So.2d 44 (Fla.1984).
In Swagel v. Goldman, 393 So.2d 65 (Fla. 3d DCA 1981), the trial court entered summary judgment for the appellee physician because the two-year statute of limitations had expired. It concluded that, as a matter of law, the limitations period began to run when appellant discovered that he was incontinent after the operation performed by appellee. Appellant testified, however, that ■ appellee continued to treat him and assure him that the condition was only temporary and would clear up in time. The appellate court decided, from that evidence, that a genuine issue of fact arose as to whether appellant discovered or should have discovered the incident which caused his'injury prior to the later date, within the statutory period, that appellee finally told him the incontinence was permanent.
In Salvaggio v. Austin, 336 So.2d 1282 (Fla. 2d DCA 1976), appellee operated on appellant in December 1968 and left a piece of tubing in her chest. Three months after the operation appellant began having chest pain, which became progressively worse. The presence of the tubing was first discovered in August 1973 when her family doctor took x-rays, and in September it was removed. Appellant filed suit in August 1974. The trial court’s entry of summary judgment based on the statute of limitations was reversed by the appellate court, which found that the cause of action was actually discovered in September 1973 with the removal of the tube. Also, the trial court could have found as a matter of law that appellant was placed on notice of her rights in August 1973 when the x-rays were made. However, the record showed a genuine issue of fact as to when, prior to August, appellant should have discovered the injury. “Since the pain experienced by [appellant] constitutes a factual question as to whether it was sufficient notice of the consequences of the alleged negligence of [appellee], summary judgment is precluded where such a genuine issue of material fact exists.” 336 So.2d at 1284 (citations omitted).
In Ash v. Stella, 457 So.2d 1377 (Fla.1984), order on remand, 458 So.2d 1234 (Fla. 3d DCA 1984), appellee filed suit alleging that his wife experienced back pains in 1975 and came under the care of a Dr. Gersing; that she was treated in January 1977 by appellant, who improperly failed to diagnose her condition as malignant hemangiopericytoma of soft tissue; that a proper diagnosis was not made until March 1977 by Dr. Hinds; and that his wife died in January 1978 as a result of the delay in proper diagnosis. The trial court entered summary judgment for appellant because the complaint was filed more than two years after.Mrs. Stella was given a preliminary proper diagnosis. The Florida Supreme Court upheld the appellate court’s reversal of the summary judgment, stating that a question of fact existed as to whether the proper diagnosis in March had put appellee on notice that a malignancy had existed in January and that appellant had been negligent in his misdiagnosis.
We conclude from these cases that there was a genuine, material issue of fact as to when appellant discovered his cause of action. It does not necessarily follow that because appellant had blood clots in his kidneys he should have known that Baxt had been negligent. It was not until September that appellant received a different diagnosis from a different doctor, which might for the first time have put him on notice that Baxt had been negligent and that he had a cause of action.
On both points, then, we reverse and remand for further appropriate proceedings.
REVERSE and REMAND.
ANSTEAD and DELL, JJ., concur.'