EMAS, C.J.
*506 MBlock Investors, LLC ("MBlock") appeals the lower court's entry of final summary judgment in favor of defendant below, Bovis Lend Lease, Inc. n/k/a Lend Lease (US) Construction, Inc. ("BLL"), in a construction defect case brought by MBlock to recover damages following its acquisition of property commonly known as the Midblock Miami East Project ("the Property").
BACKGROUND
The Property was previously owned and developed by EB Development, LLC ("EB"), who hired BLL as its general contractor. The construction of the Property was financed by HSBC Bank, who held a mortgage and lien on the Property at all relevant times. Following the completion of construction in 2008, EB transferred the Property to D/M Midtown Miami Owner, LLC ("D/M Midtown"),[1] and thereafter, BLL sued EB and D/M Midtown for allegedly failing to pay over $ 3 million in outstanding invoices. In response, EB contended that there were several construction defects in the Property.
In June 2009, EB and BLL settled their claims, and, as part of the consideration, BLL reduced its construction bill, voluntarily dismissed its lawsuit with prejudice, and discharged the lien and lis pendens ("the Close Out Agreement"). EB, in turn, released BLL and others from liability arising from construction of the Property. Specifically, the Close Out Agreement provided:
8. Subject to the provisions of Paragraphs 7 and 9, EB, for themselves, their employees, agents, managers, members, and their respective successors and assigns, hereby release, acquit and forever discharge BLL, Surety (as to the Performance Bond only) and all of their employees, servants, agents, representatives, successors and assigns (collectively, the "BLL Parties") from any and all claims, actions, causes of action, legal, equitable or administrative proceedings, demands, rights, damages, losses, relief, remedies, costs, expenses, fees and compensation of whatsoever kind or nature which EB may have against any of the BLL Parties on account of any and all acts or omissions from the beginning of the world through the date of this Agreement which are known to EB, its employees, agents, partners, managers, members, consultants, representatives, predecessors, attorneys, and their respective successors and assigns (collectively "EB Parties") as of the Effective Date , arising from the construction of the Project, the Construction Contract, or the Performance Bond, including but not limited to the alleged claims set forth in the attached schedule, Exhibit E (the "Released Claims") ... (emphasis added).[2]
*507 Two years later, D/M Midtown defaulted on the construction loan and mortgage with HSBC and agreed to convey the Property (by way of a deed in lieu of foreclosure) to MBlock, an entity formed by HSBC Bank specifically for the purpose of taking title to the Property.
In 2015, MBlock sued BLL, alleging claims of negligent construction and violations of the Florida Building Code. In response, BLL asserted the affirmative defense of release, contending that the claims were barred by the Close Out Agreement. Both parties moved for summary judgment on the release issue, and after a hearing, the trial court entered final judgment in favor of BLL.
ANALYSIS
On appeal, MBlock raises two primary issues: (1) that the Close Out Agreement does not preclude MBlock from suing BLL because MBlock is not EB's successor as a matter of law; and (2) that even if the Close Out Agreement applies to MBlock, the construction defects alleged in its complaint against BLL were latent defects, and thus, were not covered by the terms of the Close Out Agreement.[3] We must therefore determine whether the Close Out Agreement applies to MBlock in the first instance, and, if so, whether the Close Out Agreement precludes the specific claims brought by MBlock in the underlying litigation.
We review the trial court's order granting summary judgment de novo. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000) ; Gallagher v. Dupont, 918 So. 2d 342, 346 (Fla. 5th DCA 2005) (noting: "The standard of review for construction of a contract and for summary judgment is de novo.")
1. The Trial Court Correctly Determined MBlock is a Successor of EB Under the Terms of the Close Out Agreement
As to the first issue, we agree with the trial court's determination that MBlock is EB's successor, and therefore, affirm that portion of the order granting summary judgment in favor of BLL.
The Florida Supreme Court has previously explained that under the doctrine of res judicata:
A judgment on the merits[4] rendered in a former suit between the same parties or their privies , upon the same cause of action, by a court of competent jurisdiction, *508 is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.
Florida Dep't of Transp. v. Juliano, 801 So. 2d 101, 105 (Fla. 2001) (quoting Kimbrell v. Paige, 448 So. 2d 1009, 1012 (Fla. 1984) ) (bold emphasis added). "Res judicata bars a subsequent lawsuit when there is (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the quality in the person for or against whom the claim is made." Albrecht v. State, 444 So. 2d 8, 12 (Fla. 1984) (superseded by statute on other grounds).
Generally, "one who is not a party to a settlement agreement cannot be bound by its terms." Gallagher, 918 So. 2d at 348 (citing Ahern v. Odyssey Re (London) Ltd., 788 So. 2d 369, 371-72 (Fla. 4th DCA 2001) ); see also Security Prof., Inc. v. Segall, 685 So. 2d 1381, 1383 (Fla. 4th DCA 1997) (same); Udick v. Harbor Hills Dev., L.P., 179 So. 3d 489, 491-92 (Fla. 5th DCA 2015) (noting: "[A] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings"); Whetstone Candy Company v. Kraft Foods, Inc., 351 F.3d 1067, 1073 (11th Cir. 2003) (noting: "Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms.")[5]
However, there is an exception to this rule "when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." Udick, 179 So. 3d at 491 (quoting Richards v. Jefferson Cty., Ala., 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) ). A "party may be said to be a privy of another whenever there is a mutual or successive relationship to the same right." Id. (quoting Osburn v. Stickel, 187 So. 2d 89, 91-92 (Fla. 3d DCA 1966) ); see also Fabal v. Florida Keys Memorial Hosp., 452 So. 2d 946, 950 (Fla. 3d DCA 1984) (noting: "Although the term 'privity' has no definition which can be applied uniformly, it is not completely elusive, but denotes a mutual or successive relationship to the same interest in property" (internal citations omitted)); AMEC Civil, LLC v. PTG Const. Servs. Co., 106 So. 3d 455, 456 (Fla. 1st DCA 2012) (holding the doctrine of res judicata barred action where defendants were privies of prior litigant and noting: "Privity is a mutuality of interest, and identification of interest of one person with another, and includes privity of contract, the connection or relationship which exists between contracting parties." (quoting Radle v. Allstate Ins. Co., 758 F.Supp. 1464, 1467 (M.D. Fla. 1991) )). Compare Ventana Condo. Ass'n, Inc. v. Chancey Design P'ship, 203 So. 3d 175 (Fla. 2d DCA 2016) (holding where there is a substantial issue of fact in dispute as to whether Association was a successor or assign of developer, summary judgment is inappropriate.)
*509 MBlock contends that it is not in privity with EB and therefore, it cannot be bound by the Close Out Agreement. However, a review of the Close Out Agreement itself, along with the other record evidence, including the documents generated between MBlock and EB when the Property was transferred, demonstrates that: (1) EB intended that its successors and assigns would be bound by the Close Out Agreement; (2) MBlock is the successor to EB's rights and liabilities related to the Property; and (3) HSBC, which formed MBlock for the sole purpose of taking over EB's property rights, was fully aware of the litigation and settlement between EB and BLL.[6]
The Close Out Agreement provides:
EB, for themselves , their employees, agents, managers, members, and their respective successors and assigns , hereby release, acquit and forever discharge BLL , Surety (as to the Performance Bond only) and all of their employees, servants, agents, representatives, successors and assigns (collectively, the "BLL Parties") from any and all claims, actions, causes of action, legal, equitable or administrative proceedings, demands, rights, damages, losses, relief, remedies, costs, expenses, fees and compensation of whatsoever kind or nature which EB may have against any of the BLL Parties on account of any and all acts or omissions from the beginning of the world through the date of this Agreement which are known to EB, its employees, agents, partners, managers, members, consultants, representatives, predecessors, attorneys, and their respective successors and assigns (collectively "EB Parties") as of the Effective Date, arising from the construction of the Project , the Construction Contract, or the Performance Bond, including but not limited to the alleged claims set forth in the attached schedule, Exhibit E (the "Released Claims") ...
The term "successor" is generally defined by Black's Law Dictionary (10th ed. 2014) as:
1. A person who succeeds to the office, rights, responsibilities, or place of another; one who replaces or follows a predecessor. 2. A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation.
"Florida courts have generally defined a successor as "he that followeth or cometh in another's place" or, more recently, as one "who follows or takes the place another has left and sustains the like part or character." Argonaut Ins. Co. v. Commercial Standard Ins. Co., 380 So. 2d 1066, 1068 (Fla. 2d DCA 1980) (quoting Beatty v. Ross, 1 Fla. 198, 209 (1847) ). An assignee is one "to whom property rights or powers are transferred by another." Black's Law Dictionary (10th ed. 2014); see also Larkin v. City of Burlington, 172 Vt. 566, 772 A.2d 553, 557 (2001) (noting the term "successors and assigns" is "boilerplate language ... [and] ordinarily applies only when another corporation, through legal succession, assumes the rights and obligations of the first corporation.")
In Whetstone, 351 F.3d at 1071 n. 4, the Eleventh Circuit Court of Appeals considered whether, under Florida law, a settlement agreement between Kraft Foods North America, Inc. and Whetstone Candy Company was binding on Kraft N.A.'s subsidiary, *510 Kraft Foods UK, Ltd. where the settlement agreement provided that "[t]he terms and provisions of this Agreement shall inure to the benefit of and bind the successors and assigns and legal representatives of both Kraft and Whetstone." The settlement agreement between Kraft N.A. and Whetstone came about when Kraft N.A. sued Whetstone for trade dress violations related to the packaging of a chocolate-orange product. In the settlement agreement, Whetstone agreed to modify the packaging of its product in exchange for Kraft N.A.'s agreement to release Whetstone from any claims regarding a trade dress violation. After it signed the settlement agreement, Whetstone tried to market its chocolate-orange product in the United Kingdom and Kraft UK threatened legal action. Whetstone sued, seeking, inter alia, declaratory relief as to its rights under the settlement agreement with Kraft N.A. In determining that Kraft UK was not bound by Whetstone's settlement agreement with Kraft N.A., the court honed in on the fact that Kraft UK, although Kraft N.A.'s subsidiary, was not its "successor" or "assign," but "merely related to Kraft N.A. through its corporate structure." Id. at 1075-76.
Conversely, in this case, it is rather clear that MBlock is in fact, EB's "successor" for purposes of the settlement agreement with BLL because MBlock took over the Property and all of EB's rights with regard to the Property. Thus, MBlock clearly met the privity requirement for the application of res judicata in this case: it has a mutual or successive relationship to the same right that EB had when it settled with BLL: a reduction in the amount owed to BLL for its services in exchange for releasing BLL from any claims of construction defects, as provided for in the Close Out Agreement.
2. The Trial Court Erred in Granting Summary Judgment in Favor of BLL on MBlock's Latent Defect Claims
Having determined that MBlock, as a successor, is bound by the terms of the Close Out Agreement, we must next determine whether the trial court erred in determining that the Close Out Agreement precluded MBlock from litigating its latent defect claims and erred in entering summary judgment in favor of BLL.
The Close Out Agreement released BLL from known claims arising from the Project's construction, including, but not limited to, specified claims identified in Exhibit E to the Close Out Agreement. See note 2 supra . Thus, under the plain language of the Close Out Agreement, any unknown claims (e.g., latent defects), were not covered by the Close Out Agreement, and BLL was not released from liability for such claims. See generally, Falsetto v. Liss, No. 3D18-794, 2019 WL 2202543 (Fla. 3d DCA May 22, 2019). As to each claim raised by MBlock, it asserted below that the particular defects at issue were latent and were unknown at the time the Close Out Agreement was executed. MBlock supported this assertion with the affidavit of its expert, John Medina, who averred: "No one, whether a professional engineer or an untrained layperson, could have reasonably discovered the latent defects at the Project without the destructive and forensic evaluation I performed." Additionally, Medina averred that, in his expert opinion, none of the items listed in Exhibit E "provided any notice of the specific latent defects" that were later discovered by Medina's forensic evaluation.
The Medina affidavit created genuine issues of disputed fact, and the trial court erred in entering summary judgment in favor of BLL, requiring reversal. See *511 Garcia v. First Cmty. Ins. Co., 241 So. 3d 254 (Fla. 3d DCA 2018) (holding the trial court erred in granting summary judgment where there were conflicting expert reports on a material issue); RV-7 Prop., Inc. v. Stefani De La O, Inc., 187 So. 3d 915, 917 (Fla. 3d DCA 2016) (observing: "The trial court must interpret every possible inference in favor of the non-movant, and should not enter summary judgment unless the facts are so crystallized that nothing remains but questions of law" (quoting Campaniello v. Amici P'ship, 832 So. 2d 870, 872 (Fla. 4th DCA 2002) ); Virtual Computacion Y Communicaciones, S.R.L. v. Fischzang, 776 So. 2d 327, 328 (Fla. 3d DCA 2001) (noting: "Summary judgment should not be granted 'unless the facts are so crystallized that nothing remains but questions of law' ") (quoting McCraney v. Barberi, 677 So. 2d 355, 357 (Fla. 1st DCA 1996) ); Seay v. Service Am. Corp., 614 So. 2d 2 (Fla. 3d DCA 1993) (same).
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

Both EB and D/M Midtown were managed by Jack Cayre.

Exhibit E, titled "Schedule of Alleged Outstanding Issues," listed:
1. Cast Stone
2. Quality of installation, staining, and efflorescence of Amenity Deck Pavers
3. Gaps in cavity walls
4. Absence of bond beam in exterior masonry wall at elevator machine room, south wall
5. Thickness of stucco and the associated BLL contribution to the cost for testing
6. Wavy and non-plumb construction of walls, drywall and base
7. Gaps and cracks in balcony waterproofing
8. Corrosion to steel framing
9. Drywall water damage
10. Garage ventilation fans under 6'8? clearance
11. Drains on amenity deck not installed straight
12. Tolerance of concrete slabs not meeting ASTM standards 1/8? per 10' foot in 172,000 s.f.
13. All Punch list issues excluding potential future latent construction defects
14. All items identified in the Condominium Defect Mitigation ("CDM") Reports
15. Any additional OCIP credits

We do not reach the third issue raised by MBlock on appeal, related to policy considerations, as it is not necessary to the resolution of this case.

"As a general rule, a voluntary dismissal with prejudice operates as an adjudication on the merits, barring a subsequent action on the same claim." W & W Lumber of Palm Beach, Inc. v. Town & Country Builders, Inc., 35 So. 3d 79, 83 (Fla. 4th DCA 2010) (quoting Capital Bank v. Needle, 596 So. 2d 1134, 1136 (Fla. 4th DCA 1992) ); see also Arrieta-Gimenez v. Arrieta-Negron, 551 So. 2d 1184, 1186 (Fla. 1989) (holding that a consent judgment "is entitled to the same preclusive, res judicata effect as any other judgment issued by a Florida court.") Thus, the fact that the final judgment in the case between EB and BLL ended with a settlement and voluntary dismissal does not preclude this court from applying the doctrine of res judicata if it otherwise applies.

In addition, Florida follows "the traditional corporate law rule which does not impose the liabilities of the selling predecessor upon the buying successor company except under some limited circumstances. Bernard v. Kee Mfg. Co., Inc., 409 So. 2d 1047 (Fla. 1982) ; see also Corp. Express Office Prods., Inc. v. Phillips, 847 So. 2d 406, 412 (Fla. 2003) (holding: "A corporation that acquires the assets of another business entity does not as a matter of law assume the prior liabilities of the prior business.") This principle applies to LLCs. See Collier HMA Physician Mgmt., LLC v. Menichello, 223 So. 3d 334 (Fla. 2d DCA 2017). Importantly, however, one such exception to the general rule is where the successor expressly or impliedly assumes obligations of the predecessor . See Bernard, 409 So. 2d at 1049 ; Phillips, 847 So. 2d at 412.

"A settlement is a contract. An unambiguous contract provision must be afforded its plain meaning." Lazzaro v. Miller & Solomon General Contractors, 48 So. 3d 974, 975 (Fla. 4th DCA 2010).