SAWAYA, J.
Whaley Fernandes (Husband) appeals the Supplemental Final Judgment of Dissolution and order of contempt. He argues that the trial court abused its discretion in ordering him to pay $2,000 per month in permanent alimony and in finding him in contempt of court for failing to make payments under a superseded mediation agreement. We agree and reverse.
The parties married in 1977 and had two daughters, both of whom have reached their majority. Husband is a 25-year employee of FedEx, where he earns $23.67 per hour driving a truck. He has numerous health issues that, along with the economic downturn, have caused him to work less hours and his income to decline. He generally works 35-36 hours per week, but occasionally gets to work overtime. He also provided testimony that he had become responsible for one daughter’s school loan, which had a current balance of $31,000 and was expected to reach over $70,000. He asserted that he had not taken out that loan and had not signed to do so; he discovered he was “on the hook” for the loan only when he received a loan balance statement in the mail. The loan document shows the loan to be in Husband’s name and states that he is obligated to make 118 payments of $261.56 per month.
Valerie Fernandes (Wife) worked as a receptionist for the St. Johns County School Board the year prior to the dissolution and had worked for the school board, in total, almost fifteen years. In 2008, Wife earned $20,246.58 and in 2009, she earned approximately $15,000. As of the *974 June 2010 dissolution hearing, however, she had just received a letter from the school board advising her that she would not be re-employed for the 2010-11 school year. Her last day of work was the day before the hearing. She intended to find employment and hoped that the school board would hire her back. In prior years, she had received such letters, but had always been re-hired in the fall. She, too, has serious health issues, including pulmonary fibrosis, celiac disease, and a thyroid condition.
Wife filed for divorce in October 2008, and the case was referred to a general magistrate. Husband agreed at that time to pay the $2,226 monthly mortgage in lieu of any other spousal support. The general magistrate made a recommendation, which was subsequently confirmed by the trial court, that Husband pay the mortgage “until further order of the Court or agreement of the parties.” The parties then reached a mediated partial agreement in which various household items were divided, with the exception of one television, and Husband agreed to maintain insurance on Wife’s car “through the pending of this action.” He also agreed to pay the daughter’s college loan and give Wife 1/2 interest in his retirement accounts and 1/3 interest in his life insurance. He further agreed to “pay Wife the amount of $800 per month at the rate of $184.00 per week to assist the Wife with household expenses and other living expenses until the case is brought before the Court on the Wife’s motion or as [the] parties agree.” The parties reserved for the trial court the issues of the mortgage, disposition of the marital home, alimony, and possession of the one television.
The Final Judgment of Dissolution of Marriage was subsequently rendered and thereafter, Husband stopped making payments under the Partial Mediated Settlement Agreement. The judgment contained the following written finding that has caused considerable confusion among the parties:
A. It would be appropriate to move forward with the agreement the parties stipulated to in the Partial Mediated Settlement Agreement, dated June 22, 2009, and deny a further continuance, except as to any unresolved issues.
Wife interpreted this language as affirming and incorporating the Partial Mediated Settlement Agreement into the Final Judgment. Husband, on the other hand, read the language as simply reflecting that the case was going forward despite Wife’s request for a continuance and was of the understanding that the Final Judgment superseded the mediation agreement and all prior support agreements and orders.
Wife subsequently filed a motion for contempt alleging that the Partial Mediated Settlement Agreement had been incorporated into the Final Judgment via the above quoted provision.[1] She alleged in her motion that Husband had stopped making the $800 monthly payment in December 2009 (the date of the Final Judgment) although he had the ability to pay. Wife also alleged that in December 2009, Husband violated the allegedly incorporated mediation agreement by cancelling her car insurance. As other evidence of contempt, she noted that the Final Judgment contained a specific provision requiring *975 Husband to make sure that she is covered by his health insurance or COBRA and making Husband responsible for one half of the monthly premiums for said insurance. Wife alleged that Husband was in contempt for violating this provision of the Final Judgment, asserting that he had dropped her from his employer-provided insurance and had not paid Wife for one-half of the COBRA payments she had been making to keep insurance in place.
A final hearing was held both on the matters reserved in the Final Judgment, including alimony, and on Wife’s contempt motion. At the hearing, Husband raised the objection that contempt was inappropriate because the Final Judgment had superseded the Partial Mediated Settlement Agreement. He argued that by the express language of the mediation agreement, he was only to pay $800 per month temporary support and maintain car insurance for Wife until the Final Judgment was rendered. He argued that the language of the settlement agreement itself contemplated it would be affected by the eventual Final Judgment. He further contended that the $800 per month payment was temporary support that was replaced in the Final Judgment by the requirement that he pay support in an amount to maintain Wife’s health insurance. The trial court rejected Husband’s arguments and rendered the Supplemental Final Judgment of Dissolution and the contempt order that we now review finding Husband in contempt. Specifically, the trial court found that Husband failed to pay the $800 per month support payment after the Final Judgment was entered, for a total of $4221.76 in unpaid temporary support; failed to pay medical/dental insurance, causing Wife to pay $494.46 that Husband should have paid; and Husband failed to pay $972.28 in car insurance premiums. The trial court found that the total amount owed was $5,688.50, concluding, “The Former Husband is clearly in contempt for his failure to comply with these obligations he voluntarily agreed to pay.” It specifically found that Husband “has had the ability to pay” these temporary support items. The arrearage was ordered paid at a rate of $150 per month.
Addressing the contempt issue first, Husband contends that the Final Judgment did not expressly incorporate the Partial Mediated Settlement Agreement’s terms and he did not know he was supposed to comply with that agreement after the judgment was entered.[2] The Final Judgment only provides, “It would be appropriate to move forward with the agreement the parties stipulated to in the Partial Mediated Settlement Agreement ... and deny a further continuance, except as to any unresolved issues.” It appears this provision was intended to explain why the trial court was rejecting Wife’s request for continuance. In any event, what is clear is that not only does the Final Judgment fail to explicitly incorporate the mediation agreement into the Final Judgment, the Final Judgment fails to even reference the mediation agreement in a manner showing that it was understood to *976 have been adopted into the Final Judgment. Moreover, the Final Judgment stated that Wife’s health insurance obligation was imposed as support, without any indication whether that obligation was henceforth to be the sole temporary support award or whether that obligation was in addition to the $800 per month payment and the car insurance obligation. Neither party’s attorney was the attorney of record at the time of the Final Judgment and neither side has any direct knowledge of what was intended by the above quoted language of the Final Judgment. Under these circumstances, contempt was improper.
“For a person to be held in contempt of a court order, the language of the order must be clear and precise, and the behavior of the person must clearly violate the order.” Paul v. Johnson, 604 So.2d 883, 884 (Fla. 5th DCA 1992) (footnotes omitted); see also Bertuglia v. Roe, 42 So.3d 285, 285 (Fla. 5th DCA 2010) (“A party may not be held in contempt for violation of an order which is not clear and definite enough to provide notice of what the party is required to do in order to comply with the court’s decree.” (citing Marcus v. Marcus, 902 So.2d 259 (Fla. 4th DCA 2005); Kranis v. Kranis, 313 So.2d 135 (Fla. 3d DCA 1975))). Therefore, Husband cannot be held in contempt for willfully failing to adhere to the terms of the Final Judgment where such terms were never clearly set forth and he reasonably understood that the Final Judgment superseded the mediation agreement. The only clear obligation he had after the December 2009 Final Judgment was the health insurance obligation, which he met. He could not properly be found in contempt for not continuing to pay the $800 temporary support or car insurance premiums where there was no clear indication of any obligation to make those payments after the Final Judgment was entered.[3]
We turn now to the alimony issue. Husband argues that the trial court abused its discretion in awarding Wife $2,000 per month permanent alimony. We agree. The court’s rationalization for awarding Wife $2,000 was to “place the Former Wife in the approximate financial position that she was in while she last earned income when her income as a ten month employee was $20,000.00 for the ten month period of employment.” To require Husband to shoulder that entire burden at the expense of leaving him unable to support himself is error. Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980) (“[A] trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be ‘shortchanged.’ ”). As the court explained in Marshall-Beasley v. Beasley, 77 So.3d 751 (Fla. 4th DCA 2011):
“The standard-of-living is not a super-factor” over the other considerations. Donoff v. Donoff, 940 So.2d 1221, 1225 (Fla. 4th DCA 2006); see Pirino v. Pirino, 549 So.2d 219, 220 (Fla. 5th DCA 1989) (“Indeed, it is the exceptional case *977 when a couple’s resources and earnings prove sufficient to maintain two independent households in the same manner as the original household.”)_
... “Clearly the husband cannot be required to maintain the wife’s standard of living when this maintenance stretches beyond his financial capacity.” Pirino, 549 So.2d at 220.
Id. at 757.
Moreover, the amount ordered exceeded any rational support order given Husband’s own financial standing. The award would impoverish Husband and cannot, therefore, be allowed to stand.
Accordingly, we reverse the order of contempt. We also reverse that part of the Supplemental Final Judgment awarding Wife $2,000 per month permanent alimony and remand this case for further proceedings consistent with this opinion.
REVERSED and REMANDED.
ORFINGER, C.J. and EVANDER, J., concur.

. Apparently, Wife made this allegation in an attempt to fulfill the requirement of rule 12.615(d)(1), Florida Family Law Rules of Procedure, which provides, "An order finding the alleged contemnor to be in contempt shall contain a finding that a prior order of support was entered, [and] that the alleged contemnor has failed to pay part or all of the support ordered....”

. Husband cites several cases in support of his argument: Schumaker v. Schumaker, 931 So.2d 271, 274 (Fla. 5th DCA 2006) ("Once a final judgment of dissolution is rendered, the final judgment supersedes any prior temporary orders.”); Bell v. Bell, 664 So.2d 1075, 1076 (Fla. 4th DCA 1995) ("The court's written findings reflect the court's intent that the temporary arrearage order remain in effect, and the final judgment specifically incorporates the findings. We therefore affirm, but remind trial courts and counsel preparing dissolution judgments that unless temporary orders are incorporated in the final judgment they are not enforceable after final judgment.”); and Sims v. Sims, 846 So.2d 1188, 1189 (Fla. 4th DCA 2003).

. We also note that the contempt order is fatally flawed because the trial court failed to abide by the requirements of rule 12.615, Florida Family Law Rules of Procedure. Its order did not contain specific findings that Husband had notice of the contempt proceeding, and it did not address Husband’s present ability to pay and whether he willfully failed to pay. Rather, it was silent on the notice issue and contained only the perfunctory statement that Husband "has had the ability to pay.” The order also failed to include an affirmative finding, as required by rule 12.615(2)(e), that the contemnor has the present ability to comply with the purge nor did the order provide a factual basis for that finding.