NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

VENTANA CONDOMINIUM
ASSOCIATION, INC., a Florida nonprofit
corporation,

          Appellant,

v.                            Case No. 2D15-1803

CHANCEY DESIGN PARTNERSHIP, INC.,
a Florida corporation; GREGORY JONES,
an individual; ELLIOTT PAXTON
WHEELER, an individual; and HARDIN
CONSTRUCTION COMPANY, LLC, a
foreign limited liability company,

          Appellees.

Opinion filed August 12, 2016.

Appeal from the Circuit Court for
Hillsborough County; Claudia R. Isom,
Judge.

Michael A. Zaritsky of Zaritsky Law Firm,
Tampa; and Shyam "Shyamie" Dixit and
Robert L. Vessel of Dixit Law Firm, P.A.,
Tampa, for Appellant.

Stephen B. French and Edward O. Savitz of
Bush Ross, P.A., Tampa, for Appellees
Chancey Design Partnership, Inc., Gregory
Jones, and Elliott Paxton Wheeler.

No appearance for Appellee Hardin
Construction Company, LLC.


BLACK, Judge.

Ventana Condominium Association, Inc., challenges the final summary judgment in favor of Chancey Design Partnership, Inc., Gregory Jones, and Elliott Wheeler.[1] Because the trial court erred in determining that no issues of material fact were in dispute and erred in applying the law, we reverse and remand for further proceedings.

I.    History

Ventana Tampa, LLC, the developer, contracted with Hardin Construction Company, LLC, and Chancey Design to build the condominium. Issues with delays and additional costs arose, and Ventana Tampa (the Developer) entered into a Mediated Settlement Agreement (MSA) with Hardin whereby Hardin was given authority to take action on behalf of the Developer against Chancey Design. The MSA provided that it was binding upon the parties' successors, assigns, and all those holding title under them. The Developer did not assign its interests in the claims or the claims themselves to Hardin via the MSA.

Hardin sued Chancey Design in July 2008 in its own right and on behalf of the Developer.[2] During the pendency of the suit the development was foreclosed upon,

---

[1]Although a party to the action below, Hardin Construction Company, LLC, is not a party to the order on appeal and has not participated in this appeal.

[2]Additional defendants were involved in the first lawsuit who are not parties to the current suit and therefore are not relevant to this opinion.

- 2 -

and as stated in the foreclosure settlement agreement, the Developer was required to execute an assignment of its interests in any litigation between it and Hardin and Chancey Design.  The assignee was Mercantile Bank.  The final judgment of foreclosure did not reference an assignment of interests in litigation, nor did the judgment incorporate the settlement agreement.

Mercantile Bank subsequently assigned the foreclosure judgment to BMR Funding, LLC.  The assignment to BMR did not reference the assignment of any interests in the litigation from the Developer to Mercantile Bank.  BMR executed an "agency authority" stating that BMR was "the successor assignee and real party in interest to, among other things, the direct ('brick and mortar') claims" in the lawsuit between Hardin and Chancey Design.  In February 2010 Hardin and Chancey Design entered into a confidential settlement agreement, and in May 2010 Hardin—for itself and BMR—and Chancey Design executed a general release (the Release).  The Release provided, in part:

> Hardin, for itself, its agents, representatives, beneficiaries, heirs, successors, creditors, assigns, and executors, hereby fully, completely and forever releases and discharges Chancey [Design] . . . from and against any and all past and present losses, liabilities, responsibilities, demands, obligations, actions, causes of action, rights, judgments, damages, compensation of any kind, expenses (including attorneys' fees and costs), and claims whatsoever, in law or in equity, arising out of the facts and circumstances raised in the [lawsuit].

> BMR, for itself, its agents, representatives, beneficiaries, heirs, successors, creditors, assigns, executors, entities, companies and any entities or persons in privity with them, hereby fully, completely and forever releases and discharges Chancey [Design] . . . from and against any and all past and present losses, liabilities, responsibilities, demands, obligations, actions, causes of action, rights, judgments,

damages, compensation of any kind, expenses (including
attorneys' fees and costs), and claims whatsoever, in law or
in equity, arising out of the facts and circumstances raised in
the [lawsuit].

The lawsuit was dismissed in June 2010. In July 2010 Ventana
Condominium Association obtained operation, control, and duty of maintenance through
turnover from the Developer. The Association filed the current lawsuit in 2014, alleging
design defects with regard to the "amenities deck." The Association sued Chancey
Design, Gregory Jones, and Elliott Wheeler (the Chancey Defendants)[3] and Hardin.

II.     Summary Judgment

The Chancey Defendants filed their motion for summary judgment on
December 17, 2014, arguing that the Association is a successor to BMR, who—through
Hardin—entered into the Release with Chancey Design, and that the Association's
claims are the same amenities deck claims which were resolved and released in the
prior lawsuit.

At the hearing, the Association argued that in the motion for summary
judgment the Chancey Defendants admitted "the Amenities Deck was redesigned and
constructed prior to substantial completion of the [condominiums]. Ventana, as
owner/developer, accepted the redesigned and constructed Amenities Deck." The
Association argued that the defects now at issue are construction defects and/or defects
of the redesign and construction, not the original defects which resulted in the redesign
and construction; that the Release is ambiguous; and that the Release did not expressly

_____

[3]Gregory Jones and Elliott Wheeler are employees of Chancey Design
who worked on the condominium project. Mr. Jones and Mr. Wheeler were not
individual defendants in the lawsuit filed by Hardin against Chancey Design.

state it covered unknown claims arising out of the construction. The Chancey Defendants responded that the new lawsuit is premised on the same design defects resolved in the prior suit regardless of "whether it fixed the issue, whether Hardin didn't do the right work, [or] whether the [Developer] didn't put the money in to do it."

At the end of the hearing, the court found "based upon the record evidence that's been submitted, that Ventana Condominium Association is bound by the [R]elease entered into on behalf of the [Developer] at the time of the prior lawsuit" and granted the motion for summary judgment:

> Plaintiff, the Ventana Condominium Association, is the successor in interest to Ventana Tampa, LLC, the prior owner of Ventana. Ventana Tampa, LLC[,] previously assigned its interests in claims concerning the Ventana building design defects to Hardin Construction Company. These claims were settled and [the Release] signed in Case No. 08-CA-014505. Because of an identity in interest and identity in claims, the court finds plaintiff is bound by the [confidential] settlement agreement and [the Release].

III.    Analysis

A.    The Association and the Developer

In the order granting the motion for summary judgment the court found that the Association is the successor in interest to the Developer and that the Developer had assigned its interest in the claims against Chancey Design to Hardin. The court further found that the claims against Chancey Design were settled and that the Release has been executed.

1.  Applicable statutes

"A condominium is created by recording a declaration in the public records of the county where the land is located, executed and acknowledged with the

- 5 -

requirements for a deed." § 718.104(2), Fla. Stat. (2014). "The declaration must contain or provide for . . . [t]he name of the association, which must be a corporation for profit or a corporation not for profit," and "[t]he document or documents creating the association." § 718.104(4)(i), (k). The association, therefore, is created at the same time that the condominium is created by virtue of the declaration of condominium and documents creating the association being recorded together. See also § 718.112(1)(a) ("The operation of the association shall be governed by the articles of incorporation if the association is incorporated, and the bylaws of the association, which shall be included as exhibits to the recorded declaration."); Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP, 137 So. 3d 1081, 1090 (Fla. 3d DCA 2014) ("A 'declaration' or 'declaration of condominium' is the instrument or instruments by which a condominium is created. § 718.103(15), Fla. Stat. (2012). 'The declaration, which some courts have referred to as the condominium's "constitution," strictly governs the relationships among the condominium unit owners and the condominium association.' Woodside Vill. Condo. Ass'n v. Jahren, 806 So. 2d 452, 456 (Fla. 2002). The powers of a condominium association include those set out in section 718.111, Florida Statutes (2012), and, except as expressly limited or restricted by the Condominium Act, those set forth in the declaration of condominium, the bylaws of the association, and the applicable provisions of the state corporations law. § 718.111(2), Fla. Stat. (2012); see also 10 Fla. Jur. 2d Condominiums & Coop. Apts. § 122 (2012).").

A condominium association may sue "with respect to the exercise or nonexercise of its powers," which "include, but are not limited to, the maintenance, management, and operation of the condominium property." § 718.111(3); see also 10

Fla. Jur. 2d Condominiums & Cooperative Apartments § 133. And "[a]fter control of the association is obtained by unit owners other than the developer, the association may institute . . . actions or hearings in its [own] name on behalf of all unit owners concerning matters of common interest to most or all unit owners." § 718.111(3).

"At the time that unit owners other than the developer elect a majority of the members of the board of administration of an association, the developer shall relinquish control of the association, and the unit owners shall accept control." § 718.301(4). Prior to that time, control of the association is by the board of administration as elected by the developer. See § 718.112(2)(a)(1) ("The form of administration of the association shall be described indicating the title of the officers and board of administration and specifying the powers, duties, manner of selection and removal, and compensation, if any, of officers and boards. In the absence of such a provision, the board of administration shall be composed of five members . . . ."). And prior to the developer relinquishing control of the association, actions taken by a member of the board of administration designated by the developer are considered to be actions taken by the developer, and the developer is responsible to the association and its members for all such actions. § 718.301(6); see also 10 Fla. Jur. 2d Condominiums & Cooperative Apartments § 104.

Based on the plain language of these statutes, the Association—under the control of the Developer and/or the board of administration—could have been a party to the original litigation insofar as it concerned design defects. But see Bishop Assocs. Ltd. P'ship v. Belkin, 521 So. 2d 158, 161 (Fla. 1st DCA 1988) ("The ability to elect the majority of the board of directors substantially affects non-developer unit owners, as the

Division director suggests in his final order.  For example, *until* the non-developer unit owners control the association, the association may not institute, maintain, settle or appeal actions in its name on its behalf.").  However, the Association was not named in any of the original litigation documents in our record.  Ventana Tampa, LLC, as the developer, was the party involved.  Moreover, although the Developer was the only member of the Association for some period of time, it was not the board of administration and none of the original litigation documents in our record indicate that the Developer was acting in any capacity except as developer—a distinct entity separate from the Association.  Cf. Munder v. Circle One Condo., Inc., 596 So. 2d 144, 145 (Fla. 4th DCA 1992) (affirming final judgment in favor of association and against condominium developer where developer breached the bylaws while in control of the association).

The Association could have been a party to the original litigation based on the language of section 718.111 or through the filing of the lawsuit on behalf of the Association by the Developer, but it was not.  The record indicates that the rights and interests at issue in the original lawsuit against Chancey Design were those of the Developer, not those of the Association.  In this lawsuit, the rights the Association seeks to assert are its own, not rights previously asserted and released by the Developer.  The Association has not "stepped into the shoes" of the Developer or otherwise succeeded to rights that the Developer had in the original litigation.

2.    Successor in interest

- 8 -

Notwithstanding the statutory language, the record evidence does not support the trial court's conclusion that the Association is a successor in interest to the Developer. The MSA between the Developer and Hardin provided:

> 5. . . . [Hardin] retains the right to abandon or voluntarily dismiss the delay and acceleration claims; but in this event, [Developer] may elect to continue with [Developer's] direct claim. [Hardin] may only settle or compromise the Claims with [Developer's] consent, which will not be unreasonably withheld.
> 6. [Hardin] shall undertake the lead role in prosecuting the Claims against [Chancey Design] on behalf of both [Hardin] and [Developer] . . . .
> 7. . . . [Hardin] will be entitled to receive seventy-five percent (75%) of the recovery and [Developer] will be entitled to receive twenty-five percent (25%) of the recovery . . . .
>
> . . . .
> 18. The parties represent and warrant that they have not assigned or otherwise transferred any interest in any claim that is the subject of the [MSA].

There is no document in the record evidencing an assignment or successor-in-interest relationship between the Developer and Hardin. Although the motion for summary judgment attaches the MSA as evidence of an assignment, nothing in the MSA indicates more than an agency relationship between the Developer and Hardin. And while the MSA provided Hardin with the authority to file the lawsuit on behalf of itself and the Developer, it specifically stated that settlement of the Developer's claims required the Developer's consent. Nothing in our record indicates that the Developer consented to settle the claims and enter into a release. However, the Developer is not a party to the current litigation, and the Association correctly argues that as the MSA and other documents were confidential, the Association is not privy to all information from the first lawsuit.

- 9 -

Nonetheless, Hardin executed the Release for itself and its "agents, representatives, beneficiaries, heirs, successors, creditors, assigns, and executors." But there is nothing in our record to support that the Developer was any of those things.[4] This is a substantial issue of fact in dispute. See Alderman v. BCI Eng'rs & Scientists, Inc., 68 So. 3d 396, 401 (Fla. 2d DCA 2011). Moreover, the court erred in finding that the Developer assigned its interests in the claims to Hardin based on the MSA, the only evidence of the purported assignment. In effect, the court found that an assignment from the Developer to Hardin and Hardin's later release of claims acted as a release of any Developer claims. The MSA is not an assignment; rather, it creates an agency relationship.

B.    The Association and BMR

Although the final judgment does not find that the Association is a successor in interest to BMR, that was the argument made by the Chancey Defendants in their motion for summary judgment.

The condominium property was foreclosed upon, and the Developer entered into a joint stipulation of settlement of the foreclosure action. As part of the settlement, the parties agreed that the deficiency remaining after foreclosure would be in the amount of $500,000. As consideration for that stipulated deficiency figure, the Developer was required to execute an assignment "of any and all interest" it might have "in any existing or future arbitration or litigation between" it and Hardin and Chancey Design in favor of Mercantile Bank. The final judgment of foreclosure provided that all parties consented to entry of the final judgment "pursuant to that certain Joint Stipulation

_____

[4]At best, it was a principal in an agency relationship.

- 10 -

of Settlement" and "that certain Stipulation for Entry of Order on Foreclosure and Final Judgment of Foreclosure." The final judgment does not include a deficiency figure. Following entry of the final judgment of foreclosure, Mercantile Bank assigned it to BMR. Mercantile Bank assigned "without warranties or representations of any kind and without recourse to Assignor, all of Assignor's right, title and interest in and to the Final Judgment of Foreclosure, including, but not limited to, all bid rights thereunder." The assignment by Mercantile Bank to BMR does not reference the assignment from the Developer to Mercantile Bank.

In short, there was no record evidence before the trial court that BMR held the interests of the Developer at the time of the Release. Where a final judgment neither incorporates the settlement agreement nor references the terms of an agreement "in a manner showing that it was understood to have been adopted into the Final Judgment," a court cannot enforce the terms of the agreement via a motion to enforce the final judgment. See Fernandes v. Fernandes, 114 So. 3d 972, 975-76 (Fla. 5th DCA 2012). But see Holton v. Worldwide Event Prods., 164 So. 3d 792, 792 (Fla. 5th DCA 2015) ("While there was no specific incorporation by 'reference' of the MSA into the Stipulated Final Judgment, it was the primary authority for the final judgment and was thus incorporated by implication."). If the terms of the agreement cannot be enforced as part of the final judgment, assignment of the final judgment cannot carry the terms of the agreement with it. In this case, the assignment of interests in the litigation was part of the settlement agreement as to a deficiency figure and not part of the final judgment.

C.    The claims

The Chancey Defendants argued in the motion for summary judgment that the claims raised by the Association are identical to those raised in the first litigation. In response, the Association filed two affidavits, both of which contained averments that "latent defects, deficiencies and/or conditions concerning matters of common interest" were discovered after the Association obtained control from the Developer in 2010 and that "[i]n the course of conducting repairs and mitigating the damage, the Association discovered additional defects, deficiencies and/or conditions involving the Chancey defendants and Hardin." At a minimum, the deposition transcripts attached to the motion for summary judgment and the affidavits presented by the Association conflict as to whether the claims at issue are based on patent or latent defects. That is a material factual issue in dispute and one upon which the Chancey Defendants did not conclusively demonstrate that the Association could not prevail. See Schornberg v. Panorama Custom Home Builders, Inc., 972 So. 2d 243, 245 (Fla. 2d DCA 2007).

D.     The Release language

"In considering the effect to be given to the Release, we begin with 'the assumption that the released claims are those that were contemplated by the agreement.' " Moxley v. U-Haul Co. of Fla., 148 So. 3d 132, 136 (Fla. 2d DCA 2014) (quoting Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So. 2d 306, 315 (Fla. 2000)). And "we must give effect to the entire document and not merely consider its provisions in isolation from each other." Id.

Here, the Release applies to "any and all past and present losses, liabilities, responsibilities, demands, obligations, actions, causes of action, rights, judgments, damages, compensation of any kind, expenses (including attorneys' fees

- 12 -

and costs), and claims whatsoever."  The first paragraph of the Release also provides that it was executed "pursuant to the terms of the Settlement Agreement" attached to the release.  The Settlement Agreement is a handwritten document which provides, in relevant part, that

> in exchange for [said] payment, Hardin shall execute and deliver to Chancey [Design] . . . a General Release of all claims <u>by it</u> against Chancey [Design] . . . arising out of the facts and circumstances set forth in the instant complaint and a General Release by or on behalf of Mercantile Bank, as assignee of Ventana Tampa, LLC and Chanelside Building, Inc. and by or on behalf of BMR funding as assignee of Mercantile Bank.[5]

(Emphasis added.)

Although not expressly argued by the parties, the Release language identifies Hardin and BMR as the plaintiffs/releasors, along with their respective "agents, representatives, beneficiaries, heirs, successors, creditors, assigns, executors," and as to BMR individually any "entities, companies and any entities or persons in privity with them."  As discussed above, the Association is not a successor to Hardin or BMR, nor does it appear to fit into any other listed category.  Moreover, even had the Release provided that Hardin's principals were releasing their claims or that entities in privity with Hardin were releasing their claims, the Release would still be ambiguous as to the Association because of the existence of the Association at the time of the original lawsuit and the fact that the Developer—in its own right and not on behalf of the Association—entered into the agreements in question.  The Release also does not purport to apply to Mercantile Bank as assignee of the Developer.

---

[5]The General Releases referred to in the Settlement Agreement were executed and are herein referred to as the Release.

Notwithstanding that the Release is not binding upon the Association through either Hardin or BMR, the release language is ambiguous. The Association argues that the Release language does not address future losses and that it only addresses past and then-present losses, causes of action, and claims arising out of the facts and circumstances raised in the first lawsuit.

"If the terms of a written instrument are in dispute and are reasonably susceptible to two different interpretations, then an issue of fact is presented as to the parties' intent; such an issue of fact cannot be properly resolved by a summary judgment." Floyd v. Homes Beautiful Const. Co., 710 So. 2d 177, 179 (Fla. 1st DCA 1998). The Association contends that the Release is ambiguous because it is unclear whether latent defects resulting in future losses were intended to be released. We agree that "[i]t is not apparent from the four corners of the [R]elease what 'claims' the parties intended to release." Id. That is, for example, it is not apparent whether the Release language "present losses, liabilities . . . and claims" "bars a cause of action relating to a defect in existence at the time of execution of the [R]elease, but unknown to the parties; or rather, whether that modifying language limits the [R]elease to causes of action fully accrued at the time of execution." See id. And unlike other cases, the Release at issue here does not include language indicating that all claims "both known and unknown" or "whether now known or unknown" are released. Cf. Braemer Isle Condo. Ass'n v. Boca Hi, Inc., 632 So. 2d 707, 707 (Fla. 4th DCA 1994); Hardage Enters., Inc. v. Fidesys, Corp., N.V., 570 So. 2d 436, 436-37 (Fla. 5th DCA 1990). The language of the Release requires inquiry into the intent of the parties as to the scope of the Release—along with the respective authority of Hardin and BMR. See Soncoast

- 14 -

Cmty. Church of Boca Raton, Inc. v. Travis Boating Ctr. of Fla., Inc., 981 So. 2d 654, 656 (Fla. 4th DCA 2008).

IV.        Conclusion

Summary judgment is inappropriate "[i]f the record reflects even the possibility of a material issue of fact, or if different inferences can reasonably be drawn from the facts." Fla. Atl. Univ. Bd. of Trs. v. Lindsey, 50 So. 3d 1205, 1206 (Fla. 4th DCA 2010) (quoting Bender v. CareGivers of Am., Inc., 42 So. 3d 893, 894 (Fla. 4th DCA 2010)). It should only be granted "where the facts are 'so crystalized' that nothing remains but questions of law." McCabe v. Fla. Power & Light Co., 68 So. 3d 995, 997 (Fla. 4th DCA 2011) (quoting Tolan v. Coviello, 50 So. 3d 73, 74 (Fla. 4th DCA 2010)). None of the pertinent facts in this case are crystalized. At this stage of the proceedings and on this record, the Chancey Defendants have failed to establish conclusively that the Association cannot prevail on its claims. See Schornberg, 972 So. 2d at 246.

Reversed and remanded for further proceedings.


KELLY and SALARIO, JJ., Concur.