DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARK PALANCHIAN** and **DEREK PALANCHIAN,**
Appellants,

v.

**WINDSTONE PROPERTY OWNERS ASSOCIATION, INC.,** and **SOUTH FLORIDA WATER MANAGEMENT DISTRICT,**
Appellees.

No. 4D2022-2939

[January 24, 2024]

Appeal of a nonfinal order from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Gary L. Sweet, Judge; L.T. Case No. 2020CA000595.

David K. Markarian and Jessica R. Glickman of The Markarian Group, Palm Beach Gardens, for appellants.

Lissette Gonzalez of Cole, Scott & Kissane, P.A., Miami, for appellee Windstone Property Owners Association, Inc.

No appearance for appellee South Florida Water Management District.

MAY, J.

A dispute between two landowners and their mutual property owners' association ("the association") brings this nonfinal appeal to this Court. The landowners appeal an order granting the association's motion for a temporary injunction preventing the landowners from engaging in "self-help" and denying the landowners' motion to enforce the association's alleged duties under a mediated settlement agreement executed in 1996. We dismiss the appeal, in part, for lack of jurisdiction and affirm only the order denying the landowners' motion to enforce the settlement agreement.

- *A Little History*

The landowners, who are brothers, each own a residential lot governed

by the association.  Their lots abut a canal along which runs a public right-of-way owned by the South Florida Water Management District ("the SFWMD").  The litigation concerns fences that the original developer of the community built on the east and west entrances to the right-of-way, which are now owned by the association.[1]

The landowners allege the right-of-way has been host to a long history of "nuisance activity."[2]  The landowners further allege the association has a duty, arising primarily from the terms of a 1996 settlement agreement, to limit the "nuisance activity" by preventing public access to the right-of-way through the east fence during certain hours.

In 1989, the SFWMD issued a permit to the original developer, allowing him to construct the fence on the east entrance.  The permit required the fence to have a three-foot-wide pass-through to ensure the public had pedestrian access to the right-of-way.  The permittee developer retained ownership of the fence and was solely responsible for its general maintenance and legal compliance.

In 1993, the developer notified the SFWMD of "nuisance activity" on the right-of-way, alleging the "nuisance activity" was discouraging prospective buyers and disturbing a gopher tortoise preserve area comprising a part of the right-of-way.  The developer asked the SFWMD to exclude the public from the right-of-way; the SFWMD refused.

In 1994, Chase Manhattan Bank of Florida ("the bank") initiated litigation to enjoin the SFWMD from allowing public access to the right-of-way.  At that time, the bank owned about one-third of the community's lots and had allegedly "undertaken the [project's] development."[3]  The bank alleged the "nuisance activity" on the right-of-way was diminishing the value of its lots and impairing its ability to resell them.

The litigation ended in 1996 when the parties entered into a mediated settlement agreement.  As part of that settlement, the SFWMD agreed to close the right-of-way to the public from 5:00 p.m. to 9:00 a.m. each day.  The agreement stated that the association would "open and close" the right-of-way in accordance with those terms.

---

[1] This appeal concerns only the fence on the east entrance.

[2] The alleged "nuisance activity" includes fishing, biking, driving ATVs, drinking alcohol, littering, walking animals off-leash, and trespassing.

[3] The record does not evidence any transfer of interest from the original developer to the bank.

The original developer was still legally responsible for maintaining the east fence under the 1989 permit when the 1996 agreement was executed. The permit was transferred to a property management company shortly after the settlement agreement was entered and was not transferred to the association until October 2020.

- ***The Current Litigation***

In May 2020, the landowners notified the association of ongoing "nuisance activity" on the right-of-way and asked the association to close the east fence to restrict pedestrian access. When the association refused, the landowners filed suit, seeking injunctive relief and damages for negligence and private nuisance. The landowners alleged the association has a duty—arising from the terms of the 1996 settlement agreement and the 1989 construction permit—to prevent pedestrian access to the right-of-way via the east fence between 5:00 p.m. and 9:00 a.m. each day.

When the landowners initiated litigation, the east fence still had its originally constructed pedestrian pass-through, which was equipped with a gate that could be locked. The association rebuilt the east fence in August 2021, however, and did not install a gate across the pedestrian pass-through.[4]

After the association rebuilt the east fence, the landowners engaged in "self-help" by, among other things, reinstalling a gate with a lock across the pedestrian pass-through. The SFWMD notified the association the landowners' modifications to the east fence were unauthorized. The association then sent a cease-and-desist letter to the landowners, demanding they stop impeding pedestrian access to the right-of-way. The landowners removed the lock from the gate but refused to remove the gate itself.

The landowners then alleged in an amended complaint that the association was in breach of its duty under the 1996 settlement agreement because the gate remained unlocked at all hours and was not capable of being fully opened due to overgrown vegetation.

In January 2022, the association sought a temporary injunction to prevent the landowners from making further modifications to the east fence. The landowners responded by moving to enforce the 1996

---

[4] The permit for the east fence, both as originally issued in 1989 and as modified in 2021, is silent as to whether the pedestrian pass-through must be equipped with a gate.

settlement agreement, alleging the association had a duty under the agreement to "open and close" the gate in the east fence to prevent pedestrian access to the right-of-way between 5:00 p.m. and 9:00 a.m. each day.

The association argued it was not bound by the 1996 settlement agreement because it was not a party to the 1994 case and did not sign the agreement. The landowners responded the association was legally bound by the settlement agreement for two reasons: first, the bank brought the 1994 suit in its capacity as community developer and had the authority to bind the association to the agreement; and second, the agreement "runs with the land."

The association also raised two additional arguments. First, it argued the landowners lacked standing to enforce the 1996 settlement agreement because they were not parties to the agreement nor in privity with any party. Second, the association argued the trial court lacked jurisdiction to enforce the agreement because the court that originally approved the agreement had retained jurisdiction to enforce it.

The trial court held an evidentiary hearing. There, the association's president testified the 1989 permit governing the east fence did not require the association to restrict pedestrian access to the right-of-way between 5:00 p.m. and 9:00 a.m. He believed the fence complied with the permit except for the landowners' addition of a gate across the pedestrian pass-through.

The landowners retained an expert in land planning and landscape architectural services. At the evidentiary hearing, the landowners' expert testified that, in his opinion, the terms of the 1996 settlement agreement had been incorporated into the developer's 1989 permit. The expert testified he therefore believed the fence was "closer to being in compliance" with the permit *after* the landowners added the gate because it could be closed during the hours specified in the settlement agreement. He conceded the fence would have complied with the permit without the gate if the settlement agreement were not considered part of the permit.

Ultimately, the trial court granted the association's motion for a temporary injunction, simultaneously denying the landowners' motion to enforce the 1996 settlement agreement. In granting the association's motion for a temporary injunction, the trial court found the association had established a substantial likelihood of success on the merits, a likelihood of irreparable harm, lack of an adequate remedy at law, and that an injunction would serve the public interest. The trial court ordered the

association to prepare a proposed injunction order and set an injunction bond hearing. To date, the bond hearing has not been scheduled, and no final injunction order has been entered.

In denying the landowners' motion to enforce the 1996 settlement agreement, the trial court agreed with the association's arguments and ruled the association was not bound by the agreement, the landowners lacked standing to enforce it, and the trial court lacked jurisdiction to enforce it.

The landowners moved for reconsideration and/or clarification, but their motion was never heard or adjudicated. From the order granting the association's motion for a temporary injunction and denying the landowners' motion to enforce the 1996 settlement agreement, the landowners now appeal.

- ***The Appeal***

We have jurisdiction to review orders granting or denying injunctions. Fla. R. App. P. 9.130(a)(3)(B). Thus, we have jurisdiction to review the portion of the order denying the landowners' motion to enforce the 1996 settlement agreement. *See Array v. Alberigi*, 832 So. 2d 873, 873–74 (Fla. 5th DCA 2002).

We do not, however, have jurisdiction to review the portion of the order granting the association's motion for a temporary injunction because the order does not actually "grant" an injunction. Further judicial effort is required before any injunction goes into effect. *See Gleicher v. Claims Verification, Inc.*, 908 So. 2d 560, 561–63 (Fla. 4th DCA 2005).

The landowners argue the trial court erred in denying their motion to enforce the 1996 settlement agreement because the association is bound by the agreement, the landowners have standing to enforce it, and the trial court has jurisdiction to order the association to comply with its terms.

Here, our standard of review is mixed: the trial court's factual findings are reviewed for an abuse of discretion, but its legal conclusions are reviewed de novo. *Picture It Sold Photography, LLC v. Bunkelman*, 287 So. 3d 699, 702 (Fla. 4th DCA 2020).

The trial court ruled the association was not bound by the 1996 settlement agreement because it was not a party to the litigation and did not sign the agreement. The landowners do not dispute those facts but argue the association nevertheless is bound by the settlement agreement

5

for two reasons: (1) the bank signed the agreement in its capacity as the developer of the community, and the association is bound as its successor in interest; and (2) the agreement created a restrictive covenant or equitable servitude that was intended to run with the bank's lots bordering the right-of-way. We disagree with both arguments.

As to the landowners' first argument, the record does not establish the bank filed the 1994 action or signed the 1996 settlement agreement as the developer of the community rather than as an individual landowner. But even if the bank *was* acting in its capacity as the developer, the landowners failed to show it was also acting on behalf of the association, which was a separate legal entity despite the fact it was still controlled by the developer. *See Ventana Condo. Ass'n v. Chancey Design P'ship, Inc.*, 203 So. 3d 175, 179–80 (Fla. 2d DCA 2016).

As to the landowners' second argument, even assuming the parties to the 1996 settlement agreement intended to create a restrictive covenant or equitable servitude benefitting the bank's lots bordering the right-of-way, the landowners failed to show how that restrictive covenant or equitable servitude would be enforceable against the association, particularly where neither the current owners of those lots nor the association were parties to the 1996 settlement agreement. *Cf. Hayslip v. U.S. Home Corp.*, 336 So. 3d 207, 209–10 (Fla. 2022); *Silver Blue Lake Apts., Inc. v. Silver Blue Lake Home Owners Ass'n*, 245 So. 2d 609, 611–12 (Fla. 1971).

We also disagree with the landowners' argument the trial court erred in ruling they lacked standing to enforce the 1996 settlement agreement. The landowners were not parties to the litigation or the settlement agreement, and they failed to show the agreement expressed a clear intent to benefit future owners of the lots bordering the right-of-way. *See generally Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. 4th DCA 2004) (holding a non-party may sue for breach of contract if and only if the contract "clearly express[es] an intent to primarily and directly benefit the third party or a class of persons to which that party belongs").[5]

---

[5] We do agree with the landowners on one argument, which involves the trial court's jurisdiction to enforce the 1996 settlement agreement. Specifically, the trial court ruled the motion could have been filed only in the court that had originally approved the agreement and reserved jurisdiction to enforce it. That ruling was in error because the original court's reservation of jurisdiction did not deprive the present trial court of the ability to adjudicate the issue. But that error is harmless in light of our holding the trial court did not err in finding the association was not bound by the settlement agreement and the landowners lacked standing to enforce it.

We affirm the portion of the order denying the landowners' motion to enforce the 1996 settlement agreement. We dismiss the appeal as to the portion of the order granting the association's motion for a temporary injunction because the trial court's work is not complete, and the issue is not yet final.

*Affirmed in part; dismissed in part.*

WARNER and FORST, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing***