DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

COLEMAN LASSEN,

Appellant,

v.

DOLPHIN TOWER CONDOMINIUM ASSOCIATION, INC.,

Appellee.

No. 2D2024-0168
_____

July 11, 2025

Appeal from the Circuit Court for Sarasota County; Stephen M. Walker, Judge.

Kevin D. Micale of Ulrich, Scarlett, Watts & Dean, P.A., Sarasota, for Appellant.

Matthew Overpeck, Forrest L. Andrews, and Debbie G. Maken of Lydecker LLP, Tampa (withdrew after briefing); E. Taylor George of Chartwell Law, Deerfield Beach (substituted as counsel of record), for Appellee.

VILLANTI, Judge.

Coleman Lassen appeals the trial court's final summary judgment in favor of Dolphin Tower Condominium Association, Inc. We have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A). Because the Dolphin Tower Declaration of Condominium contains two conflicting and contradictory provisions, a genuine issue of material fact existed and the trial court

entered summary judgment in error.  Accordingly, we reverse the trial court's final summary judgment and remand for further proceedings.

## Background

Dolphin Tower Condominium experienced a major structural failure in 2010.[1]  Repairs were extensive and required bringing the fifteen-story building into compliance with then-current building codes. To access common elements during the repairs and renovation, contractors for Dolphin Tower Condominium Association removed portions of the interiors of some units, including portions of the painted textured ("popcorn") finish applied to those units' ceilings.

Work stopped when asbestos was discovered in the popcorn ceiling finish in some units—including Mr. Lassen's—after partial removal by the Association's contractor.  The Association demanded that the affected unit owners abate the asbestos in their units, citing unit owners' responsibilities under Article V(3)(b)(1) of the Dolphin Tower Declaration of Condominium.  Article V(3)(b)(1) provides that unit owners must "maintain, repair and replace at [their] sole and personal expense . . . interior surfaces of . . . ceilings . . . and all other portions of [their] apartment except the portions specifically to be maintained repaired and replaced by the Association."

Mr. Lassen did not abate the asbestos and instead sued the Association for damages pursuant to section 718.303, Florida Statutes (2010), negligence, and injunctive relief arising from the Association's failure to repair the damage to his unit under Article V(3)(a)(3) of the Declaration.  Article V(3)(a)(3) provides that "incidental damage caused to

---

[1] A structural failure of the fourth-floor concrete slab required that all residents evacuate the building until the building could be stabilized and reconstruction completed.

2

an apartment by [the Association's maintenance and repair to common elements] shall be promptly repaired by the Association."

The Association moved for summary judgment and argued:

[T]he Declaration is clear that Plaintiff, as the unit owner, is responsible for the asbestos which exists in Plaintiff's popcorn ceiling . . . . the Declaration specifically states that Defendant is not responsible for screening, windows, interior and exterior doors, glass, interior surfaces of the walls, ceilings, and floors appurtenant to apartment units.

Mr. Lassen responded that because the Association was required under the Declaration to maintain the common elements and "promptly repair all damage to individual units that resulted from work performed in connection with the Association's common element maintenance, repair and replacement obligation," a genuine issue of material fact existed that precluded entry of summary judgment. Absent damage caused by the Association, Mr. Lassen conceded responsibility for his unit's ceiling finish under Article V(3)(a)(3).

At the summary judgment hearing, the Association argued that the duty to abate the asbestos was a question of law and that because Article V(3)(b)(1) made Mr. Lassen responsible for the interior surface of his ceiling, he was therefore required to abate the asbestos found on that interior surface. Mr. Lassen responded that it was the Association that disturbed the surface of the ceiling—thereby creating the necessity to abate the asbestos found therein[2]—and accordingly it was the Association's responsibility to abate the asbestos.

---

[2] There was evidence below supporting that asbestos would not need to be abated until disturbed, as the Association did here when its contractor removed portions of Mr. Lassen's ceiling finish unit to access common elements.

The trial court reserved ruling at the conclusion of the summary judgment hearing, and the subsequent order granting summary judgment centered on whether the Association owed Mr. Lassen any legal duty to abate the asbestos. The trial court reasoned:

> The interpretation of contracts, such as the Declaration, is a question of law to be determined by the Court. The Court's interpretation is guided by the unambiguous language in the Declaration, conceded by Plaintiff, that the decoration of the ceiling (which includes the PTC) falls within the boundary of Plaintiff's unit. Therefore, it is Plaintiff's duty to abate the condition. . . .
>
> Accordingly, the Court finds Plaintiff has failed as a matter of law to establish that Defendant owed a duty to Plaintiff related to the asbestos abatement. Thus, Defendant is entitled to partial summary judgment on Plaintiff's claims set forth in Count I (Action for Damages Pursuant to Fla. Stat.§ 718.303) and Count III (Negligence). Further, Defendant's duty to repair Plaintiff's unit is not implicated until Plaintiff completes the abatement.

Mr. Lassen argues on appeal that the trial court erred in granting summary judgment by finding the Association owed Mr. Lassen no duty to abate the asbestos, where the competing provisions of the Declaration, Articles V(3)(a)(3) and V(3)(b)(1), created a fact question for the jury.

### The Law

We review summary judgment de novo. *Cordero v. Fla. Ins. Guar.*, 354 So. 3d 1150, 1153 (Fla. 2d DCA 2023) (citing *LoBello v. State Farm Fla. Ins.*, 152 So. 3d 595, 598 (Fla. 2d DCA 2014)). We review a trial court decision interpreting a contract de novo. *Schmidt v. Sabow*, 331 So. 3d 781, 788 (Fla. 2d DCA 2021) (citing *On Target, Inc. v. Allstate Floridian Ins.*, 23 So. 3d 180, 182 (Fla. 2d DCA 2009)). A declaration of condominium is a contract between the unit owners and the association and is interpreted like any other contract. *McLlenan v. Cypress Chase N. Condo. No. 4 Ass'n*, 387 So. 3d 321, 325 (Fla. 4th DCA 2024) (citing

4

*Waverly 1 & 2, LLC v. Waverly at Las Olas Condo. Ass'n*, 242 So. 3d 425, 428 (Fla. 4th DCA 2018)).

"On summary judgment, the trial court's function is solely to determine whether the record conclusively shows that the moving party proved a negative, that is, 'the nonexistence of a genuine issue of a material fact.' " *Cordero*, 354 So. 3d at 1152-53 (quoting *Bryson v. Branch Banking & Tr. Co.*, 75 So. 3d 783, 785 (Fla. 2d DCA 2011)).

Florida Rule of Civil Procedure 1.510(a) provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court shall state on the record the reasons for granting or denying the motion. The summary judgment standard provided for in this rule shall be construed and applied in accordance with the federal summary judgment standard.

To survive summary judgment under the federal standard, the nonmoving party must "demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Casey v. Mistral Condo. Ass'n*, 380 So. 3d 1278, 1286 (Fla. 1st DCA 2024) (quoting *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013)). "If the nonmoving party fails to make that showing, then the trial court should award summary judgment in favor of the moving party. If, however, the nonmoving party does demonstrate a genuine issue of material fact, then the trial court should deny the motion." *Id.*

"If the terms of a written instrument are in dispute and are reasonably susceptible to two different interpretations, then an issue of fact is presented as to the parties' intent; such an issue of fact cannot be properly resolved by a summary judgment." *Ventana Condo. Ass'n v. Chancey Design P'ship*, 203 So. 3d 175, 183 (Fla. 2d DCA 2016) (quoting *Floyd v. Homes Beautiful Const. Co.,* 710 So. 2d 177, 179 (Fla. 1st DCA

5

1998)); *see also Casey*, 380 So. 3d at 1287 (explaining that where declaration provisions were reasonably susceptible to more than one interpretation, issue of fact had been presented that could not properly be resolved by summary judgment).

## Analysis

Here, the Association met its initial burden under rule 1.510(c) by directing the court to Article V(3)(b)(1), which provides that Mr. Lassen is responsible for the interior surface of his ceiling where the asbestos was found, a fact that Mr. Lassen conceded and the trial court correctly noted in its order granting summary judgment. However, while Article V(3)(b)(1) requires Mr. Lassen to—for example—paint his own ceiling, it does not expressly state that Mr. Lassen is additionally obligated to mitigate asbestos discovered in such paint after the Association's agent enters his unit and damages the interior in furtherance of the Association's duty to repair and maintain common elements.

The undisputed evidence before the trial court was that the asbestos was not discovered until the Association's contractor entered Mr. Lassen's unit and caused damage to the interior surface of his ceiling in furtherance of the Association's obligation to maintain and repair common elements. Accordingly, when Mr. Lassen responded to the Association's motion for summary judgment by directing the trial court to Article V(3)(a)(3), Mr. Lassen "presented a reasonable interpretation of the [Declaration] that, under Florida substantive law, created a genuine dispute as to a material fact." *Casey*, 380 So. 3d at 1286. "Given two conflicting but reasonable interpretations, a contract will be viewed as ambiguous at the early stage of summary judgment." *Id.* at 1287 (quoting *In re Color Tile Inc.*, 475 F.3d 508, 515-16 (3d Cir. 2007)). Where, as here, the terms of the Declaration are in dispute and are

6

reasonably susceptible to two different interpretations, then an issue of fact was presented that could not be properly resolved by a summary judgment. *Ventana Condo. Ass'n*, 203 So. 3d at 183.

Here, the order granting final summary judgment reflects the trial court looked no further than Article V(3)(b)(1) before concluding that the Association owed no legal duty to Mr. Lassen. In so doing, the trial court apparently disregarded Article V(3)(a)(3) in its entirety. By disregarding Article V(3)(a)(3), the trial court failed to satisfy its only function at that stage: to determine whether the record conclusively showed that the Association had proven the nonexistence of a genuine issue of a material fact. *See Cordero*, 354 So. 3d at 1152-53.

The conflict between two reasonable interpretations of Article V(3)(a)(3) and Article V(3)(b)(1) reflect that the Association did not meet its burden, and the trial court committed reversable error by granting summary judgment. *Ventana Condo. Ass'n*, 203 So. 3d at 183; *Casey*, 380 So. 3d at 1286.

## Conclusion

Accordingly, we reverse the trial court's order granting final summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.


NORTHCUTT, J., Concurs.
ATKINSON, J, Concurs in result only.

ATKINSON, Judge, Concurring in result only.

I respectfully concur in result only. While I agree with the majority that the Association was not entitled to judgment as a matter of law, I cannot agree with the majority's supporting rationale that because the

7

declaration of condominium "contains two conflicting and contradictory provisions," a "genuine issue of material fact" rendered summary judgment inappropriate.

The two provisions at issue are not in conflict. And based on the provision that applies under the circumstances of this case, the evidence is such that a reasonable jury could find in Mr. Lassen's favor. Consequently, the Association was not entitled to judgment as a matter of law, and the trial court's order should be reversed.

As the parties frame it, the issue is on whom the declaration places the responsibility to abate asbestos located in the popcorn textured ceiling in Mr. Lassen's unit—on the Association or Mr. Lassen. The record indicates that the Association needed to renovate or repair certain aspects of the building that are undisputedly within its responsibility under the declaration, such as utility pipes and wiring, but it could only access some of those areas by removing the ceiling and walls within Mr. Lassen's unit. Despite the presence of the asbestos, photographs in the record show that the Association commenced work by removing portions of the ceiling and demolishing certain walls in Mr. Lassen's unit. The record is unclear whether the Association knew of the presence of the asbestos in the ceiling before doing so. Either way, even the Association acknowledged in its motion for summary judgment that "asbestos abatement was required prior to commencement of any work" but was not undertaken. The Association's renovation work has since stalled pending the resolution of the asbestos issue, leaving Mr. Lassen's unit in an uninhabitable state.

Each party claims that the other is responsible under the declaration for abating the asbestos. The Association relies on section V.3.(b)(1), which requires the "apartment owner" to "maintain, repair and

8

replace at his sole and personal expense all . . . interior surfaces of all . . . ceilings." And because the asbestos was located on the interior surface of the ceiling, the Association contends that Mr. Lassen is responsible to abate it. Mr. Lassen relies on section V.3.(a), which generally requires in subsections (1) and (2) that the Association "maintain, repair and replace" certain areas relating to the support of the building and the furnishing of utility services and provides in subsection (3) that "[a]ll incidental damage caused to an apartment by such work shall be promptly repaired by the Association." Mr. Lassen contends that abatement of the asbestos is the Association's responsibility because the need to do so "resulted from the common element renovation work undertaken by the Association and performed within [his] [u]nit."

The majority asserts that there is a genuine dispute of material fact because each party presented a "reasonable interpretation" of the declaration in light of the two provisions "conflicting" with each other. Respectfully, the majority is incorrect because the two provisions at issue are not in conflict. Rather, they can and should be harmonized. *See City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (describing the "rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions" of the contract); *see also Dimitri v. Com. Ctr. of Miami Master Ass'n*, 253 So. 3d 715, 718 (Fla. 3d DCA 2018) ("An association declaration is a contract . . . ." (citing *Cohn v. Grand Condo. Ass'n*, 62 So. 3d 1120, 1121 (Fla. 2011))). Given the ordinary meaning of the declaration's terms in context, the Association's disharmonious interpretation of the two provisions is not reasonable. The fact that section V.3.(a)(3) requires the Association to repair "incidental damage caused to *an apartment*" necessarily contemplates that there are circumstances in which the Association

9

must make repairs to an area that would otherwise be within the apartment owner's responsibility. (Emphasis added.) Indeed, the declaration defines the upper boundary of an "apartment" in section III.10(a)(1) to be the "horizontal plane of the undecorated finished ceiling," which is where the asbestos is located in Mr. Lassen's unit. So even though the interior surface of the ceiling is within the boundaries of the "apartment" and is generally within the apartment owner's responsibility under section V.3.(b)(1), the Association will bear the responsibility to make repairs pursuant to section V.3.(a)(3) if it causes incidental damage to the interior surface of the ceiling in connection with work it is doing pursuant to section V.3.(a)(1)–(2). Stated differently, the mere identification of the area that needs repairs is not necessarily dispositive of who bears the obligation to make them because the Association must promptly repair "incidental damage [it] caused to an apartment."

Consistent with this harmonized reading of the pertinent provisions, there is an exception explicitly carved out of the provision that places the maintenance, repair, and replacement obligation on the apartment owner for damage within his or her apartment. The apartment owner's obligation in section V.3.(b)(1) excludes "the portions specifically to be maintained, repaired and replaced by the Association." According to section V.3.(a)(3), one such portion specifically to be maintained, repaired, and replaced by the Association would be any portion of "an apartment" that suffers "incidental damage caused . . . by" any "work" performed pursuant to the Association's obligation to make repairs under section V.3.(a).

Based on the record evidence in this case, abatement of the asbestos in Mr. Lassen's unit only became necessary due to the

10

renovations that the Association was performing. Those renovations necessitated the removal of portions of the ceiling and walls in Mr. Lassen's unit where the asbestos was located so that the Association could access the areas of the building that it needed to renovate. And the need to remove portions of the ceiling, in turn, necessitated abatement of the asbestos so that it would not be disturbed and cause a health hazard. At that point, it was the Association's renovation work that "caused" the "incidental damage" to Mr. Lassen's unit—that is, asbestos that had to be abated. Additionally, Mr. Lassen presented evidence that the Association prematurely removed portions of his ceiling *before* the asbestos was abated, thereby causing incidental damage to his unit in connection with the Association's renovation work. Under these circumstances, it would be the Association's responsibility under section V.3.(a)(3) of the declaration to abate the asbestos in Mr. Lassen's unit.

The Association argues that Mr. Lassen was obligated to abate the asbestos in his unit *before* the asbestos would be disturbed because such abatement would inevitably become necessary when the Association "took necessary actions to repair the common elements" it planned to undertake in the future. Characterizing Mr. Lassen's intransigence as holding the "entire building hostage," the Association contends that Mr. Lassen was required to abate asbestos that was not yet in need of abatement because to refrain from doing so would "result[] in obstruction of critical work on the common elements by [the Association]." But such a formulation finds no support in the text of the document governing the dispute. The declaration does not give the Association authority to force an apartment owner to fix something that is not broken. The record reflects that there is no dispute that the asbestos in Mr. Lassen's apartment would not be in a state necessary to

11

require abatement—and did not become so—until *the Association* disturbed it by undertaking repairs in areas undisputedly outside the confines of Mr. Lassen's apartment. No matter the chronology of repair work—whether abatement of intra-apartment asbestos in anticipation of the Association's repairs to common elements of the building or abatement of asbestos after it was disturbed by the Association's common element repairs—the disturbed asbestos would be "incidental damage caused to an apartment by" work undertaken by the Association. Regardless of the urgency of the circumstances that might have given rise to the Association's need to repair common portions of the building— such as the 2010 structural failure—there would be no need to abate the asbestos in Mr. Lassen's apartment but for the Association's repairs. As such, the disturbed asbestos in need of abatement would fall under section V.3.(a)(3) because it would be "incidental" to, and "caused" by, the Association's repair work.

Contrary to the majority's contention, the summary judgment evidence does not indicate a material issue of fact regarding the meaning of the declaration that should be resolved by a jury. However, because Mr. Lassen presented evidence from which a reasonable jury could rule in his favor, the trial court erred by concluding that the Association was entitled to judgment as a matter of law. *See Baxter v. Morelli*, 403 So. 3d 397, 402 (Fla. 2d DCA 2025) (providing that the "correct test" at summary judgment "is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party' " (quoting *In re Amends. to Fla. Rule of Civ. P. 1.510*, 317 So. 3d 72, 75 (Fla. 2021))). I would therefore reverse the trial court's final summary judgment and remand for further proceedings for the reasons described herein and not for the reasons described in the majority opinion.

12

_____

Opinion subject to revision prior to official publication.